## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JEAN FLETCHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ZWICKER & ASSOCIATES, P.C., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

## INTRODUCTION

1.      Plaintiff Jean Fletcher brings this action to secure redress against unlawful collection practices engaged in by debt collector Zwicker & Associates, P.C. ("Zwicker").

2.      Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

3.      The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

4.      Plaintiff contends that defendant sued on a time-barred credit card debt.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under 28 U.S.C. §§1331, 1337 and 1367 and 15 U.S.C. §1692k (FDCPA).

6.      Venue in this District is proper because defendant's collection activites took place in this District.

## PARTIES

7.      Plaintiff Jean Fletcher resides in the Northern District of Illinois.

8.      Defendant Zwicker is a law firm organized as a corporation chartered

1

under the law of Massachusetts.  It maintains an office and employs attorneys in Illinois.  Its registered agent and office is CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

9.      Defendant Zwicker uses the mails and telephones to collect debts originally owed to other entities.

10.      Defendant Zwicker is a debt collector as defined in the FDCPA.

### FACTS RELATING TO PLAINTIFF

11.      On or about August 26, 2010, Zwicker filed suit against Ms. Fletcher in the Circuit Court of Kendall County, Illinois, seeking to collect an American Express credit card with an account number ending in 91005.  A copy of the complaint and exhibits thereto is attached as Appendix A.  The alleged debt was incurred for personal, family or household purposes.

12.      The statute of limitations on a credit card debt is five years (735 ILCS 5/13-205).  *Portfolio Acquisitions, LLC v. Feltman*, 391 Ill. App. 3d 642; 909 N.E.2d 876 (1st Dist. 2009);  *Nicolai v. Mason,* 118 Ill.App.3d 300, 454 N.E.2d 1049 (5th Dist. 1983) (claim based on "charge account" at retail store governed by five-year statute); *Parkis v. Arrow Financial Services,* No. 07 C 410, 2008 U.S.Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Ramirez v. Palisades Collection LLC,* No. 07 C 3840, 2008 U.S.Dist. LEXIS 48722 (N.D.Ill. June 23, 2008) (both of the federal cases were cited with approval in *Portfolio Acquisitions v. Feltman*).

13.      In *Portfolio Acquisitions v. Feltman*, the Appellate Court noted that "the issuance of a credit card and cardholder agreement is a standing offer to extend credit that may be revoked at any time" (391 Ill.App.3d at 649), and that as a result "parol evidence would still be required to show all essential terms and conditions of the contract. Parol evidence would also be required to show the relationship between the parties and demonstrate defendant's receipt and acceptance of the essential terms."  (391 Ill.App.3d at 652)

14.      The Kendall County action was filed more than five years after the cause

2

of action accrued. American Express had claimed that the same alleged credit card account was in default no later than December 24, 2004. Ms. Fletcher made no payments on the account within five years preceding the filing of this action.

15. Defendant, in order to make its lawsuit appear to be timely, attached as an exhibit to its complaint a credit card agreement that was represented as being that which "Plaintiff issued, at the same time as, or prior to issuing said American Express Card . . . ."

16. In truth and in fact, the attached agreement was not sent "at the same time as, or prior to issuing" the card. It was a form that was not used until several years after the account sued upon went into default. By utilizing recent documents to collect old accounts, defendant misrepresents the age of the account.

17. Ms. Fletcher appeared and defended the action, retaining counsel for that purpose, and incurring time and expense as a result.

18. American Express, represented by Zwicker, had a briefing schedule entered on Ms. Fletcher's motion to dismiss based on the statute of limitations, but filed no response. On November 17, 2010, Zwicker nonsuited the Kendall County lawsuit, stating that it had been unable to obtain documents relating to the account.

## COUNT I – FDCPA

19. Plaintiff incorporates paragraphs 1-18.

20. The alleged debt that was the subject of <u>Appendix A</u> was no longer enforceable through legal action as a result of the expiration of the five-year statute of limitations, 735 ILCS 5/13-205.

21. Defendant violated 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f by filing suit on time barred debts. *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480 (M.D.Ala. 1987). "It thus is a violation of the FDCPA to sue or threaten to sue consumers to recover on time-barred debt." "Collecting Consumer Debts: The Challenges of Change: A Federal Trade Commission Workshop Report (February 2009)", pp. 63-64.

22.    Section 1692e provides:

**§ 1692e.    False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)    The false representation of–**

**(A)    the character, amount, or legal status of any debt; . . .**

**(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

23.    Section 1692f provides:

**§ 1692f.    Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendant for:

(1)    Statutory damages;

(2)    Actual damages;

(3)    Attorney's fees, litigation expenses and costs of suit;

(4)    Such other or further relief as the Court deems proper.


s/Daniel A. Edelman
Daniel A. Edelman

4

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
      & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\24986\Pleading\Complaint_Pleading.WPD

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


<u>s/Daniel A. Edelman</u>
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
       & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

# APPENDIX A

IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
KENDALL COUNTY, ILLINOIS

| | | |
|---|---|---|
| AMERICAN EXPRESS<br>CENTURION BANK | ) | No.    2 0 1 0   L M     7 4 9 |
|       Plaintiff, | ) | |
| | ) | Amount Claimed : $15,187.09 |
| vs. | ) | |
| | ) | FILED |
| FLETCHER, JEAN | ) | AUG 26 2010 |
|     Defendant(s). | ) | BECKY MORGANEGG<br>CIRCUIT CLERK KENDALL CO. |

**COMPLAINT**

NOW COMES the Plaintiff, American Express Centurion Bank, ("American Express") by and through its Attorneys, Zwicker and Associates, and complaining of Defendant(s), JEAN FLETCHER, states as follows:

**COUNT I – BREACH OF CONTRACT**

1.     Plaintiff, American Express, is a Utah State Chartered bank with principal place of business at 4315 South 2700 West, Salt Lake City, Utah 84184.

2.     Defendant, JEAN FLETCHER, is a natural person presently residing at ████████████████████

3.     The Plaintiff issued an American Express Card bearing Defendant's name and the account number XXXX-XXXXXX-91005.

4.     Plaintiff issued, at the same time as, or prior to issuing said American Express Card, a Card Member Agreement to Defendant.

5.     The Card Member Agreement offered Defendant use of the credit card account pursuant to the terms set forth therein.

6.     Defendant received the American Express Card and the Card Member Agreement.

7.     By the terms of the Card Member Agreement, upon the Defendant's use

Redacted

of the card, a contract was entered into between the Plaintiff and the Defendant, the terms and conditions of said contract as being set forth in the Card Member Agreement.

8. Defendant used the card on one or more occasions.

9. Plaintiff honored the charges to the credit card account pursuant to the terms of the Card Member Agreement.

10. The terms of the Card Member Agreement further provided, in summary, that the Defendant would pay the Plaintiff for all charges made on his/her account in connection with all American Express cards issued on that account, as more fully set forth therein. A copy of said Card Member Agreement is attached as "Exhibit A."

11. Thereafter, Defendant defaulted on said credit card account by failing to make payments pursuant to the terms of the Card Member Agreement.

12. There is a balance due on said credit card account in the amount of $15,187.09, which includes interest pursuant to the Card Member Agreement.

13. Due demand has been made on Defendant for the payment of this sum.

14. Defendant has refused and continues to refuse to pay.

15. Pursuant to the Card member Agreement, Plaintiff is entitled to reasonable attorneys' fees and court costs.

WHEREFORE, Plaintiff, American Express Centurion Bank demands judgment against the Defendant, JEAN FLETCHER, in the amount of $15,187.09 plus interest, reasonable attorneys' fees and court costs or for any such other relief as this Honorable Court may deem just and appropriate.

## COUNT II – UNJUST ENRICHMENT

1. Plaintiff hereby references Paragraphs 1 – 3 of Count I of this complaint, and incorporates them herein.

2. Before the filing of this action, the Plaintiff and the Defendant had certain

account.

3.     The Plaintiff rendered statements of account to the Defendant to which the Defendant did not object.

4.     As of the date of filing, pursuant to the terms of the Agreement, the Defendant, JEAN FLETCHER, owes American Express the amount of $15,187.09.

5.     The Defendant has failed, neglected and refused to pay the debt, and the amounts due and owing have inured to the benefit and enrichment of the Defendant.

6.     The Plaintiff has made numerous requests for payment, and the Defendant has refused to pay the Plaintiff, whereby, the Defendant has been unjustly enriched.

WHEREFORE, Plaintiff, American Express Centurion Bank, demands judgment against the Defendant, JEAN FLETCHER, in the amount of $15,187.09 plus interest, reasonable attorneys' fees and court costs or for any such other relief as this Honorable Court may deem just and appropriate.

Respectfully submitted,

Michael S. McDonald
One of its Attorneys

Zwicker and Associates, P.C.
7366 N. Lincoln Ave.
Suite 404
Lincolnwood, IL  60712
(847)677-7410 /(800)370-2251
ARDC# 6257344
Dupage: 229977

FDR 920608

CD 25346 (05/08)

## Agreement Between Gold Cardmember and American Express Centurion Bank

AMERICAN EXPRESS

**Welcome to American Express Cardmembership**

This document and the accompanying supplement(s) constitute your Agreement. Please read and keep this Agreement. Abide by its terms. When you keep, sign or use the Card issued to you (including any renewal or replacement Card), or you use the account associated with this Agreement (your "Account"), you agree to the terms of this Agreement. The words "you", "your" and "yours" mean the person who applied for the Account and the person to whom we address billing statements, as well as any person who agrees to be liable on the Account. The "Basic Cardmember" is the person who opened the Account. At your request, we may issue a Card on your Account to another person (an "Additional Cardmember"). The term "Card" refers to the American Express® Card issued to you, all other Cards issued on your Account, and any other device (such as Account numbers) with which you may access your Account. "We," "our" and "us" refer to American Express Centurion Bank, the issuer of your Account.

**Using the Card**

You may use the Card to obtain goods and services from any person who accepts the Card. Transactions you make in response to promotional offers from us will be subject to the terms of the promotion and this Agreement. All amounts charged to your Account, including charges for purchases, annual fee(s), if any, any amounts guaranteed by use of the Card, other fees, and any Finance Charges, are "Charges." You agree not to let any person use a Card except a Cardmember whose name is on it. You agree to notify us if the Card is lost or stolen, or you suspect that it is being used without your permission. You agree to use the Account only for purchases that are lawful and are permitted under this Agreement. Except as otherwise required by applicable law, we will not be responsible if any merchant refuses to honor the Card or for any other problem you may have with a merchant.

The Card has no pre-set spending limit. Each Charge is evaluated in light of your spending and payment patterns on your Account and other accounts you may have with us and our affiliates, your credit history, including payment history with other creditors, and your personal resources known to us. We reserve the right to deny any request for authorization for a Charge. We may also request additional information from you at any time.

We may issue you renewal or replacement Cards before a previously issued Card expires.

If you or an Additional Cardmember authorize a third party to bill Charges on a recurring basis to your Account ("Recurring Charge(s)"), we may (but are not required to) provide such third party with your current Account status, Card number and/or expiration date to permit that third party to continue billing your Account. We may take such steps even if your account number changes or if we issue a renewal or replacement Card to you or an Additional Cardmember. To withdraw authorization for a Recurring Charge, you must notify the third party.

**Promise to Pay**

You promise to pay all Charges, including Charges incurred by Additional Cardmembers, on your Account. This promise includes any Charge for which you or an Additional Cardmember indicated an intent to incur the Charge, even if you or the Additional Cardmember have not signed a charge form or presented the Card. You also promise to pay any Charge incurred by anyone that you or an Additional Cardmember let use the Card, even though you may have agreed not to let anyone else use the Card.

**Status and Responsibility for Additional Cardmembers**

Additional Cardmembers do not have accounts with us. Instead, they are authorized users on your Account, and the Cards issued to them may be canceled by you or us at any time. You must notify us to revoke an Additional Cardmember's permission to use your Account. You are responsible under this Agreement for all use of your Account by the Additional Cardmembers, and by anyone else you or an Additional Cardmember lets use the Card, and the Charges they incur will be billed to you. You have this responsibility even if you did not

intend for an Additional Cardmember, or other person, to use the Card for any transactions.

An Additional Cardmember is not liable for Charges incurred by the Basic Cardmember or by other Additional Cardmembers. However, by each use of the Additional Card to incur Charges, the Additional Cardmember indicates his or her agreement to pay us for the Charge if you fail to or refuse to pay it, and we may, at our discretion, pursue Additional Cardmembers for payment of Charges they incur or authorize. You authorize us to provide Account information to Additional Cardmembers and to discuss the Account with them.

You agree to notify each Additional Cardmember, at the time he or she becomes an Additional Cardmember, that we may receive, record, exchange and use information about him or her in the same manner we do with information about you, as described below in the Consumer Reports, Telephone Monitoring/Recording, and Suspension/Cancellation sections of this Agreement. You agree to notify each Additional Cardmember that Additional Cardmembers are subject to all applicable provisions of this Agreement.

**Flexible Payment Features**

We may advise you that we have added or may add one or more special plans to your Account that permit you to extend payment on various Charges designated by us. In this Agreement, each of these special plans is called a "Feature". These Features include, but are not limited to, Sign & Travel,® Extended Payment Option, and certain promotional offers we may make.

The Sign & Travel Feature permits you, if eligible, to extend payment for airline tickets, cruise ship tickets, prepaid tour packages, certain Charges made outside of the U.S. and any other Charges designated by us. To elect to use this Feature, if you are eligible, you must either advise the travel agent, airline, or other travel industry merchant that you wish to do so when giving your Account number for payment at the time of purchase, or follow other procedures prescribed by us.

The Extended Payment Option permits you, if eligible, to extend payment for all eligible Charges by advising us one time that you wish to do so. If this Feature is added to your Account, all of your eligible Charges will be billed under the Extended Payment Option Feature of your Account. Eligible Charges means those individual Charges that are at or above the dollar amount disclosed to you when you enroll in this Feature, or any other amount designated by us. The following are examples of Charges that are not eligible Charges: Express Cash, American Express® Travelers Cheques, American Express® Gift Cheques, Privileged Assets,® insurance, real estate and other transactions determined by us.

The Bank may change its designation of what Charges are eligible for the Sign & Travel Account and/or the Extended Payment Option at any time. Any Charges that are not eligible for extended payment, or any other eligible Charges for which you have elected not to extend payment, will be due in full upon your receipt of the billing statement. Additionally, any Charges incurred by a Cardmember who is not eligible to use one of the Features will also be due in full upon your receipt of the billing statement.

If your Account is not enrolled in a Feature, you may request to transfer the pay-in-full balance, or a portion thereof, to a Feature, and extend payment of those amounts over time. We may approve or decline your transfer request in whole or in part at our sole discretion. Any portion of the pay-in-full balance not authorized by us for transfer to a Feature must be paid in full upon your receipt of the Account billing statement.

**Billing Statements**

You must notify us immediately of any change in the mailing or e-mail address to which we send billing statements or notices that a billing statement has been posted ("Billing Address"). If you wish a Billing Address change to apply to more than one account you maintain with us, you must tell us. You agree that we may also update your Billing Address if we receive information that your Billing Address has changed or is incorrect. We apply those terms of this Agreement that vary by state according to your Billing Address. When we receive information that you have changed your Billing Address, those

terms of this Agreement that vary depending on the state of your Billing Address will apply to the entire balance of your Account, including existing balances.

**Amount Due**

Each billing statement will reflect a New Balance and an Amount Due. The "Amount Due" is the total of (i) all Charges on your Account other than those associated with Features, plus (ii) the Flexible Minimum Amount Due (described below) for any Charges associated with Features, plus (iii) any portion of any previously billed Amount Due that remains unpaid. The Amount Due is due and payable once you receive the billing statement.

**Flexible Minimum Amount Due**

If you have Charges associated with Features on the Closing Date of the billing statement ("Flexible New Balance"), your billing statement will reflect a Flexible Minimum Amount Due ("Minimum Amount Due"). Payment is due by the time and date shown and in the manner prescribed on the statement. The Minimum Amount Due will not exceed your Flexible New Balance. You may pay more than the Minimum Amount Due, up to the entire outstanding balance, at any time. To calculate the Minimum Amount Due, we take the greatest of the following amounts and round the result to the nearest whole dollar:

(a) 2% of the Flexible New Balance;

(b) the lesser of:
   (i) current billed Finance Charges plus 1% of the Flexible New Balance (excluding finance charges from the Flexible New Balance), or
   (ii) 4% of the Flexible New Balance; or

(c) $20.

**Adjusted Minimum Amount Due**

*Summary:* If you consistently pay more than the Minimum Amount Due outlined above, and you have paid your amounts due in full, we may calculate your minimum payment without the additional 1% of the balance referenced in (b)(i). If we do this, and finance charges are more than 2% of the Flexible New Balance, we may add $15 to your minimum payment. For information about how this works, read the detailed description below.

*Detailed Description:* We may adjust the outlined calculation above by removing "plus 1% of the Flexible New Balance" in (b)(i). After the adjustment, if your Minimum Amount Due is equal to the current billed Finance Charges, we will increase your Minimum Amount Due by $15.

We will apply the adjusted calculation to your Account if:
- the sum of your payments (credited to your Flexible New Balance in the six consecutive billing periods ending with the Closing Date of the current billing period) is greater than the sum of the Minimum Amounts Due (for the six consecutive billing periods ending with the Closing Date of the previous billing period, not using the adjusted calculation and including the amount past due in only the first of those six periods);
- the sum of the Minimum Amounts Due is equal to the sum of your payments (defined above) and it is less than or equal to $120;
- the sum of the Minimum Amounts Due is zero and we used the adjusted calculation in the last billing period when your Minimum Amount Due was not zero; or
- it is the first billing period ending on or after November 16, 2007, and your Account was opened before that date.

If we adjust your Minimum Amount Due, we will do so for at least six billing periods, and if we stop adjusting your Minimum Amount Due, we will not adjust it again for at least six billing periods, regardless of your payment history.

**Payments**

All payments must be sent to the payment address shown on your billing statement and must include the remittance coupon from your billing statement. Payment is due upon your receipt of the billing statement. You must pay us in U.S. currency, with a single draft or check drawn on a U.S. bank and payable in U.S. dollars, or with a negotiable instrument payable in U.S. dollars and clearable through the U.S. banking system,

1

Exhibit    A

or through an electronic payment method clearable through the U.S. banking system. Your Account number must be included on or with all payments. If we decide to accept a payment made in a foreign currency, you authorize us to choose a conversion rate that is acceptable to us to convert your remittance into U.S. currency, unless a particular rate is required by law.

Payments conforming to the above requirements that we receive no later than the hour specified on your billing statement will be credited to your Account as of the day received; payments conforming to the above requirements that we receive after the hour specified on your billing statement will be credited to your Account as of the following day.

If payment does not conform to the requirements stated above, crediting may be delayed. If this happens, additional Charges may be imposed. We may accept late payments, partial payments or any payments marked as being payment in full or as being settlement of any dispute without losing any of our rights under this Agreement or under the law. Our acceptance of such payments does not mean we agree to change this Agreement in any way. You agree that our acceptance of such payments will not operate as an accord and satisfaction without our prior express written approval.

*Subject to applicable law, we will apply and allocate payments and credits among Features and Charges on your Account in any order and manner determined by us in our sole discretion.* In most cases, we will apply and allocate payments to the Minimum Amount Due on Feature balances first, then to amounts due in full. The remainder of your payment will be applied to any outstanding Feature balances. Amounts applied to Feature balances will be applied first to Feature balances at lower Annual Percentage Rates ("APRs") and then to higher APR Feature balances. In most cases, we will apply purchase credits first to the balance from which the corresponding debit originated. However, for servicing, administrative, systems or other business reasons, we may apply and allocate payments and credits among Features and Charges on your Account in some other order or manner that we may determine in our sole discretion. You agree that we have the unconditional right to exercise this discretion in a way that is most favorable or convenient to us.

**Authorization for Electronic Debit to Your Checking Account**

When you provide a check as payment, you authorize us to use information from your check to make an electronic fund transfer from your account or to process the payment as a check transaction. If we process your check electronically, funds may be withdrawn from your bank or asset account as soon as the same day we receive your check. Also, if we process your check electronically, you will not receive that cancelled check with your bank or asset account statement.

**Finance Charges on Features**

A. Finance Charges begin to accrue for each Charge as of the date it is added to the daily balance for a Feature, as described below. However, for Charges (other than Finance Charges) that are added to a balance automatically, no Finance Charges will accrue in any billing period in which the total Account balance on the Closing Date for the previous billing period is zero or a credit balance. In addition, Finance Charges will not accrue during a billing period on any Feature balance if, by the Closing Date of that billing period, payment in full of the New Balance shown on the statement for the previous billing period is credited to your Account; provided, however, that Finance Charges will accrue on transactions added at your request to a Feature balance during the billing period.

B. Each Feature is subject to the same Daily Periodic Rate ("DPR"), unless we notify you otherwise. Except as provided below, the DPR for each Feature is based on an APR, which may vary. The APR is the Prime Rate (described below) plus 9.99%. A DPR is 1/365th of the APR. Your DPRs and APRs appear on the accompanying supplement(s). When an APR changes, we apply it to any existing balance subject to that rate.

C. The "Prime Rate" is determined once with respect to each billing period. The Prime Rate for each billing period is the Prime Rate published in the Money Rates section (or successor section) of *The Wall Street Journal* on (a) the first day of that billing period or (b) the day that is two days prior to the Closing Date of that billing period, whichever is higher. In each case, if such a day is not a customary publication day for *The Wall Street Journal*, we will substitute the closest preceding day that is a customary publication day. If *The Wall Street Journal*

ceases or suspends publication, we may refer to the Prime Rate published in any other newspaper of general circulation in New York, New York, or we may substitute a similar reference rate at our sole discretion. Any increase or decrease to an APR resulting from a change in the Prime Rate takes effect as of the first day of the billing period. An increase in the Prime Rate means that the variable APRs (and corresponding DPRs) applicable to your Account will increase and you may incur higher Finance Charges and may have a higher Minimum Amount Due.

D. The DPR (and corresponding APR) on all Features may increase to the Default Rate if during the Review Period (i) your Account is delinquent on the Closing Date of any three billing periods; (ii) your Account is delinquent on the Closing Date of any two consecutive billing periods; or (iii) a payment submitted on your Account is not honored. Your Account will be considered delinquent if payment of the Amount Due from a billing period is not credited to your Account by the Closing Date of the next billing period. The "Review Period" is the period, constituting approximately one year, of twelve consecutive billing periods ending with the Closing Date of the current billing period, whether or not you received a statement for each such billing period. If the Default Rate is applied, it will apply to your Account for twelve consecutive billing periods, beginning with the current billing period. The Default Rate will not apply to any balance for Features unless it is higher than the rate that would otherwise apply to that balance. The Default Rate is a DPR which corresponds to an APR equal to the Prime Rate plus 21.99%.

**Average Daily Balance Method for Calculation of Finance Charges**

We use the Average Daily Balance method to calculate Finance Charges on your Account. Under this method, we calculate the Finance Charges on your Account by applying the DPR to the Average Daily Balance (as described below) separately for each Feature subject to a different DPR (including current transactions). Different DPRs may be applied to separate Feature balances. To get the Average Daily Balance for each Feature, we (1) take the beginning balance for each day (including unpaid Finance Charges from previous billing periods), (2) add any new transactions, debits, or fees, (3) subtract any payments or credits credited as of that day, and (4) make any appropriate adjustments. *For each day after the first day of the billing period, we also add an amount of interest equal to the previous day's daily balance multiplied by the DPR for that Feature.* This gives us the daily balance for the Feature for that day and the beginning balance for that Feature for the next day. If this balance is negative, it is considered to be zero. Then, we add up all the daily balances for the Feature for the billing period and divide the total by the number of days in the billing period. This gives us the Average Daily Balance for that Feature.

If you multiply the Average Daily Balance for each Feature by the number of days in the billing period and the DPR for that Feature, the result will be the Finance Charge assessed on that Feature, except for variations caused by rounding. The total Finance Charge for the billing period is calculated by adding the Finance Charges assessed on all Features of the Account. *This method of calculating the Average Daily Balance and Finance Charge results in daily compounding of Finance Charges.* We may use mathematical formulas which produce equivalent results to calculate the Average Daily Balance, Finance Charge, and related amounts. For example, we may utilize computer programs or other computational methods that are designed to produce mathematically equivalent results while using fewer and/or simpler computational steps than are described in this Agreement.

At our discretion, we may exclude certain categories of debit transactions or fees from the calculation of the daily balances. Unless we elect to use a later date, we add a Charge to the daily balance as follows: For Charges (other than Finance Charges) that are added to a balance automatically, we add the Charge to the appropriate daily balance for the Feature as of the transaction date of the Charge. For Charges that are not added to a balance automatically (e.g., in response to a specific transfer request), we add the Charge to the appropriate daily balance for the Feature as of the date we process the request.

Periodic Finance Charges are added to the outstanding balance at the end of the billing period for which Finance Charges are calculated. In our sole discretion, we also may round any calculations made in determining the Finance Charges on your Account in any way that is convenient to us.

Any such rounding may apply to or cause variations in your DPRs.

**Annual Fees**

We will bill your Account an annual fee of $125 for the Basic Card Membership Rewards is automatically included on your Account. We will bill your Account an annual fee of $35 for the Basic Card if Membership Rewards is not automatically included. We will bill your Account an annual fee of $35 for up to five Additional Cards on your Account, and $35 for each Additional Card on your Account after the first five. The annual fee for each Card is increased by $5 if the Billing Address of the Basic Cardmember is outside the United States.

**Late Fees**

If payment of any portion of the Amount Due on a billing statement is not credited to your Account by the 14th day after the Closing Date of the next billing period ("Next Closing Date"), we may assess a fee of $35 (Iowa $15). In addition, if payment of that Amount Due is not credited to your Account by the following Next Closing Date, we may assess an additional fee in that same billing period of the greater of $35 or 2.99% of the total Amount Due that was not credited to your Account by that Next Closing Date (Iowa $15). If payment of the total Amount Due is not credited to your Account by successive Next Closing Dates, we may assess a fee equal to the greater of $35 or 2.99% of the total Amount Due that remains unpaid by each successive Next Closing Date (Iowa $15).

**Other Fees**

We may charge the following fees to your Account, subject to applicable law:

1. **Dishonored Payments:** We may charge a fee of $38 whenever any check, similar instrument, or electronic payment order that we receive as payment on your Account is not honored upon first presentment.

If a Card is presented in connection with cashing a check at an American Express Travel Service Office or other authorized location and the check is not honored, we may charge a fee of $38. (We will also add a Charge to your Account in the amount of the check that was not honored.)

2. **Copies of Statements:** We may charge a fee of $5 for each billing period for which a copy of a billing statement is requested. We will not charge this fee for any request for a copy of any of the billing statements for the three billing periods immediately prior to the request.

3. **Account Re-opening Fee:** We may charge a re-opening fee of $25 if your Account is canceled for any reason and you request reinstatement and such request is honored.

**Suspension/Cancellation**

In addition to any other actions we may take under this Agreement, we may suspend or cancel your Account, any Feature, or any component of your Account, and/or we may suspend or cancel the authorization of any Additional Cardmember to make Charges to your Account, at our sole discretion at any time, with or without cause, whether or not your Account is in default, and without giving you notice, subject to applicable law. Any such action on our part will not cancel your obligation to pay all Charges due on your Account under the terms of this Agreement in effect at the time of such action or as subsequently amended, and you agree to pay us all such Charges despite any such action. We may advise third parties who accept the Card that the Card(s) issued to you and/or Additional Cardmembers have been canceled. If we cancel the Card or it expires, you may no longer use it and you must destroy it or return it to us or, if we request, to a third party. If you want to cancel the Account or any Additional Cards, you must notify us and destroy the Card(s).

If we agree to reinstate your Account after a cancellation, the new Agreement we send you (or, if we do not send you a new Agreement, this Agreement as it may be amended) will govern your reinstated Account. When we reinstate your Account, we may reinstate any Additional Cards issued in connection with your Account, and bill you the applicable annual fee(s).

**Default**

We may consider your Account to be in default at any time if you fail to pay us any amount when it is due, or if you breach any other promise or obligation under this Agreement.

Subject to applicable law, we may also consider your Account to be in default at any time if any statement made by you to us in connection with this Account or any other credit program was false or misleading; if you breach any other promise or

2

obligation under any other agreement that you may have with us or with any of our affiliates; if we receive information indicating that you are bankrupt, intend to file bankruptcy, or are unable to pay your debts as they become due; or we receive information leading us to conclude that you are otherwise not creditworthy. In evaluating your creditworthiness, you agree that we may rely on information contained in consumer reports, and in our discretion we may consider the amount of debt you are carrying compared to your resources or any other of your credit characteristics, regardless of your performance on this Account. We may also consider your Account to be in the event of your death.

In the event of your default, and subject to any limitations or requirements of applicable law, we may require payment of a portion of your outstanding balance greater than the total Minimum Amount Due, declare the entire amount of your obligations to us immediately due and payable, and/or suspend or cancel your Account, any component of your Account, and/or any Feature that may be offered in connection with the Account. You agree to pay all reasonable costs, including reasonable attorneys' fees, incurred by us (1) in connection with the collection of any amount due on your Account, whether or not any arbitration, litigation, or similar proceedings are initiated; and (2) in reasonably protecting ourselves from any loss, harm, or risk relating to any default on your Account.

**Transactions Made in Foreign Currencies**

If you incur a Charge in a foreign currency, it will be converted into U.S. dollars on the date it is processed by us or our agents. Unless a particular rate is required by applicable law, you authorize us to choose a conversion rate that is acceptable to us for that date. Currently, the conversion rate we use for a Charge in a foreign currency is no greater than (a) the highest official conversion rate published by a government agency, or (b) the highest interbank conversion rate identified by us from customary banking sources, on the conversion date or the prior business day, in each instance increased by 2%. This conversion rate may differ from rates in effect on the date of your Charge. Charges converted by establishments (such as airlines) will be billed at the rates such establishments use.

**Benefits and Services**

Subject to applicable law, we have the right to add, modify or delete any benefit, service, or Feature that may accompany your Account at any time and without notice to you.

**Arbitration**

**Purposes:** This Arbitration Provision sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.

**Definitions:** As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to your Account, this Agreement, the Electronic Funds Transfer Services Agreement, and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above agreements ("Agreements"), except for the validity, enforceability or scope of this Arbitration Provision or the Agreements. For purposes of this Arbitration Provision, "you" and "us" also includes any corporate parent, or wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns, any purchaser of any accounts, all agents, employees, directors and representatives of any of the foregoing, and other persons referred to below in the definition of "Claims." "Claim" includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity. "Claim" also includes claims by or against any third party using or providing any product, service or benefit in connection with any account (including, but not limited to, credit bureaus, third parties who accept the Card, third parties who use, provide or participate in fee-based or free benefit programs, enrollment services and rewards programs, credit insurance companies, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a Claim asserted by you or us against the other. The term "Claim" is to be given the broadest possible meaning that will be enforced and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to (a) any of the accounts created under

any of the Agreements, or any balances on any such accounts, (b) advertisements, promotions or oral or written statements related to any such accounts, goods or services financed under any of the accounts or the terms of financing, (c) the benefits and services related to Cardmembership (including fee-based or free benefit programs, enrollment services and rewards programs), and (d) your application for any account. We shall not elect to use arbitration under the Arbitration Provision for any Claim that you properly file and pursue in a small claims court of your state or municipality so long as the Claim is individual and pending only in that court.

**Initiation of Arbitration Proceeding/Selection of Administrator:** Any Claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed (the "Code"), except to the extent the Code conflicts with this Agreement. Claims shall be referred to either the National Arbitration Forum ("NAF") or the American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. If a selection by us of either of these organizations is unacceptable to you, you shall have the right within 30 days after you receive notice of our election to select the other organization listed to serve as arbitration administrator. For a copy of the procedures, to file a Claim or for other information about these organizations, contact them as follows:

- NAF at P.O. Box 50191, Minneapolis, MN 55405; website: www.arbitration-forum.com.
- AAA at 335 Madison Avenue, New York, NY 10017; website: www.adr.org.

**Significance of Arbitration:** IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM. FURTHER, YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION, EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU OR WE WOULD HAVE IF YOU WENT TO COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

**Restrictions on Arbitration:** IF EITHER PARTY ELECTS TO RESOLVE A CLAIM BY ARBITRATION, THAT CLAIM SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC, OTHER CARDMEMBERS OR OTHER PERSONS SIMILARLY SITUATED. The arbitrator's authority to resolve Claims is limited to Claims between you and us alone, and the arbitrator's authority to make awards is limited to awards to you and us alone. Furthermore, claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with Claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. Notwithstanding any other provision in this Agreement (including but not limited to the Continuation provision below) and without waiving either party's right to appeal such decision, should any portion of this Restrictions on Arbitration provision be deemed invalid or unenforceable, then the entire Arbitration Provision (other than this sentence) shall not apply.

**Arbitration Procedures:** This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16, as it may be amended (the "FAA"). The arbitration shall be governed by the applicable Code, except that (to the extent enforceable under the FAA) this Arbitration Provision shall control if it is inconsistent with the applicable Code. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the decision. The arbitration proceeding shall not be governed by any Federal or state rules

of civil procedure or rules of evidence. Either party may submit a request to the arbitrator to expand the scope of discovery under the applicable Code. The party submitting such a request must provide a copy to the other party, who may submit objections to the arbitrator with a copy of that objections provided to the requesting party, within fifteen (15) days of receiving the requesting party's notice. The granting or denial of such a request will be in the sole discretion of the arbitrator, who shall notify the parties of his/her decision within twenty (20) days of the objecting party's submission. The arbitrator shall take reasonable steps to preserve the privacy of individuals, and of business matters. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision will be final and binding, except for any right of appeal provided by the FAA. However, any party can appeal that award to a three-arbitrator panel administered by the same arbitration organization, which shall consider anew any aspect of the initial award objected to by the appealing party. The appealing party shall have thirty (30) days from the date of entry of the written arbitration award to notify the arbitration organization that it is exercising the right of appeal. The appeal shall be filed with the arbitration organization in the form of a dated writing. The arbitration organization will then notify the other party that the award has been appealed. The arbitration organization will appoint a three-arbitrator panel that will conduct an arbitration pursuant to its Code and issue its decision within one hundred and twenty (120) days of the date of the appellant's written notice. The decision of the panel shall be by majority vote and shall be final and binding.

**Location of Arbitration/Payment of Fees:** Any arbitration hearing that you attend shall take place in the federal judicial district of your residence. You will be responsible for paying your share, if any, of the arbitration fees (including filing, administrative, hearing and/or other fees) provided by the Code, to the extent that such fees do not exceed the amount of the filing fees you would have incurred if the Claim had been brought in the state or federal court closest to your billing address that would have jurisdiction over the Claim. We will be responsible for paying the remainder of any arbitration fees. At your written request, we will consider in good faith making a temporary advance of all or part of your share of the arbitration fees for any Claim you initiate as to which you or we seek arbitration. You will not be assessed any arbitration fees in excess of your share if you do not prevail in any arbitration with us.

**Continuation:** This Arbitration Provision shall survive termination of your accounts as well as voluntary payment of the Account balance in full by you, any legal proceeding by you or us to collect a debt owed by the other, any bankruptcy by you or us, and any sale by us of your Account (and in the case of sale, its terms shall apply to the buyer of any of your Account). Except as otherwise provided in the Restrictions on Arbitration provision above, if any portion of this Arbitration Provision (other than the Restrictions on Arbitration provision) is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this Arbitration Provision, the Agreement or any predecessor agreement you may have had with us, each of which shall be enforceable regardless of such invalidity.

**Waiver**

Our failure to exercise any of our rights under this Agreement, our delay in enforcing any of our rights, or our waiver of our rights on any occasion, shall not constitute a waiver of such rights on any other occasion.

**Consumer Reports**

You authorize us to request consumer reports about you, to make whatever credit investigations we deem appropriate, to obtain and exchange any information we may receive from consumer reports and other sources, and to use such information for any purposes, subject to applicable law.

You authorize us to furnish information concerning your Account to consumer reporting agencies, or others, subject to applicable law. If you believe information we have furnished about your Account to a consumer reporting agency is inaccurate, you should write to us at: American Express Credit Bureau Unit, P.O. Box 7871, Ft. Lauderdale, FL 33329-7871 and identify the specific information you believe is inaccurate.

You are hereby notified that information about your Account that may have a negative impact on your credit record

may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**Telephone Monitoring/Recording**

You agree that from time to time we may monitor and/or record telephone calls between you or Additional Cardmembers and us to assure the quality of our customer service or as required by applicable law.

**Use of Card at Federal Government Agencies**

American Express has entered into contracts that enable the Card to be accepted at certain federal government agencies and departments ("Agencies"). As with Card transactions at commercial establishments, when you choose to use your Card at an Agency, certain Charge information is necessarily collected by us. Charge information from Card transactions at Agencies may be used for processing Charges and payments, billing and collections activities and may be aggregated for reporting, analysis and marketing activities. Additional "routine uses" of Charge information by Agencies are published periodically in the Federal Register.

**Insurance Products Notice**

We identify insurance providers and products that may be of interest to you. In this role we may act on behalf of the insurance provider, as permitted by law. We receive compensation from insurance providers that may vary by provider and product. Also, we may receive additional compensation or financial benefit when AMEX Assurance Company or another American Express entity acts as the insurer or reinsurer for these products. The arrangements we have with providers, including the potential to insure or reinsure products, may also influence what products and providers we identify.

**Notices**

Any notice given by us shall be deemed given when deposited in the U.S. mail, postage prepaid, addressed to you at the latest Billing Address shown on our records.

**Changing this Agreement/Assignment of this Agreement**

We may change the terms of or add new terms to this Agreement at any time, in accordance with applicable law. We may apply any changed or new terms to any then-existing balances on your Account as well as to future balances. This written Agreement is a final expression of the agreement between the creditor and the debtor and the written Agreement may not be contradicted by evidence of any alleged oral agreement. We may also sell, transfer or assign this Agreement and the Account at any time without notice to you. You may not sell, assign or transfer your Account or any of your obligations under this Agreement. Your Account may be transferred to American Express Centurion Services Corporation if your Account is in default under the terms of this Agreement.

**Assignment of Claims**

In the event you dispute a Charge and we credit your Account for all or part of such disputed Charge, you automatically succeed to, and you are automatically deemed to assign and transfer to us, any rights and claims (excluding tort claims) that you have, had or may have against any third party for an amount equal to the amount we credited to your Account. After we make such credit, you agree that without our consent you will not pursue any claim against or reimbursement from such third party for the amount that we credited to your Account, and that you will cooperate with us if we decide to pursue that third party for the amount credited.

**Applicable Law**

This Agreement and your Account, and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of Utah (without regard to internal principles of conflicts of law), and by applicable federal law. We are located in Utah, hold your Account in Utah, and entered into this Agreement with you in Utah.

**AMERICAN EXPRESS CENTURION BANK**

To American Express Cardmembers In The United States and Its Territories.

**Your Billing Rights — Keep This Notice for Future Use.**

This notice contains important information about your rights and our responsibilities under the "Fair Credit Billing Act."

**Notify Us in Case of Errors or Questions About Your Account Statement**

If you think your statement is wrong or if you need more information about a transaction on your statement, write us on a separate sheet of paper at the address for billing inquiries listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can also telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your Account statement automatically from your savings, checking or other account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities after We Receive Your Written Notice**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the statement was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including Finance Charges. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your statement that are not in question.

If we find that we made a mistake on your statement, you will not have to pay any Finance Charges related to any questioned amount. If we did not make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amounts. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your statement, and we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50 of the questioned amount, even if your statement was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with the Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations to this right: (a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

*Note for Ohio Residents: The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.*

Agreement Between Cardmember and American Express Travel Related Services Company, Inc. Concerning Electronic Fund Transfer Services

Once you enroll in Express Cash (Call 1-800-CASH-NOW), Pay By Computer, Pay By Phone or any other American Express Electronic Funds Transfer service (hereafter the "Program"), you will be subject to this Electronic Funds Transfer Agreement (the "EFT Agreement").

**Scope of Agreement**

This EFT Agreement covers your participation in the Program. In this EFT Agreement, the words "you" and "your" refer to the Basic Cardmember and also include all Additional Cardmembers who have enrolled in the Program. The words "we", "our" and "us" refer to American Express Travel Related Services Company, Inc. The words "your American Express Account" refer to your Card Account or any other American Express Accounts that we permit you to enroll in the Program. The words "your Bank Account" refer to the account held by a bank, securities firm or other financial institution from which payment will be made when you make transactions under the Program. The words "your Bank" mean the bank, securities firm or other financial institution that holds your Bank Account. The words "other options" refer to electronic payment transfer options and/or other cash access that American Express may make available from time to time, including the option to pay your Card Account bill electronically using a computer, phone or other device. Participating in the Express Cash Program will enable you to use the Card to obtain cash from Automated Teller Machines ("ATMs") operated by any bank or financial institution that participates in the Express Cash Program.

The Card Account is governed by the Cardmember Agreement that is attached to this EFT Agreement. That agreement and the capitalized terms in it also apply here.

**Personal Identification Number**

In connection with your participation in the Program, we have issued to you or allowed you to choose your own Personal Identification Number ("PIN"). Each time you wish to obtain cash at an ATM you must supply your PIN and use or present the Card. To ensure that no unauthorized transactions are made under the Express Cash Program, you should take all reasonable precautions to prevent any other person from learning your PIN or using the Card. For example, never keep any material containing your PIN attached to or with the Card. Other electronic funds transfer options may or may not require the use of a PIN.

**Limits on Obtaining Cash or Cheques**

The limit on the amount of cash that you and Additional Cardmembers on your American Express Accounts may obtain from ATMs is $2,500 in any seven-day period. We may impose additional limits at our sole discretion (in addition to any limits imposed by the ATM's operator).

**Payment for Cash Transactions**

Each time you initiate a transaction under the Program, you instruct and authorize us or our agent to draw a check or initiate an automated clearing house ("ACH") debit in your name on your Bank Account, payable to us or to our agent, in the amount of the transaction. The amount of the transaction is the total of (i) the amount of any cash you received or other funds transfer you authorized, (ii) the amount of any other goods or services obtained, and (iii) any fees imposed for use of the ATM by its operator.

**Fees**

We may charge a fee to the Card Account for each Express Cash transaction at an ATM. This fee will be 3% of the amount of the transaction, with a minimum of $5. The amount of the transaction is the total of (i) the amount of any cash you received or other funds transfer you authorized, (ii) the amount of any other goods or services obtained, and (iii) any fees imposed for use of the ATM by its operator. In addition, for each transaction your bank may assess its customary transaction fee or per-check or item-handling charge, if any. We may also charge a fee of $38 for each check or ACH debit drawn by us or our agent in connection with the Program that is not honored upon first presentment, subject to applicable law. Your bank may also assess its customary charge for such items, if any.

**Dishonored Requests for Payments**

If any check or ACH debit drawn by us or our agent in connection with the Program is not honored by your bank, we have the right to charge the amount of any such transaction, and the dishonored payment fee referred to above, to the Card Account or to collect the amount from you. If this happens, we may cancel your right to participate in the Program.

For certain Bank Accounts, you may have a separate agreement with us or with a participating bank, securities firm, or other financial institution that allows a line of credit to be accessed in the event that your Bank Account contains

4

insufficient funds to make payment to us. You should refer to the appropriate agreement contained herein, that line of credit for the terms and conditions that govern its use.

**Liability for Unauthorized Transactions and Advisability of Prompt Reporting**

You must tell us AT ONCE if you believe the Card or your PIN has been lost, stolen or used without your permission. Telephoning is the best way of minimizing possible losses. If a transaction was unauthorized, and within two days after you learn about it you notify us, that the transaction was unauthorized, we will not hold you liable for that transaction. In any event, even if you fail to notify us, your liability for any unauthorized transaction or series of related unauthorized transactions shall not exceed $50. If you believe the Card or your PIN has been lost or stolen or that someone has transferred or may transfer money from your Bank Account without permission call:

1-800-528-4800 (within U.S.) or 1-336-393-1111 (outside U.S.) anytime, or write: American Express Credit Department, P.O. Box 53830, Phoenix, Arizona 85072-3830.

Outside the United States, you may also contact any American Express Travel Service location to report a loss or theft of the Card or your PIN.

**Our Liability for Improper Transactions or Payments**

If a transaction is not completed as you have directed or if we do not complete a transfer to or from your Bank Account on time in the correct amount, we will research and correct it as necessary, once you advise us. We will also reimburse you for your actual losses or damages, if any, caused by our error. However, there are some exceptions. We will not be liable to you in the following instances:

- if, through no fault of ours, your Bank Account does not or did not contain enough money to complete the transaction or the transfer would exceed an established credit limit;
- if the funds in your Bank Account are or were at the time of the attempted transaction subject to legal process or other encumbrance restricting the transaction;
- if the ATM or other location where you are making the transaction did not have enough cash;
- if the ATM was not working properly and you knew this at the time you started making the transaction;
- if circumstances beyond our control (such as fire or flood) prevent or prevented the transaction, despite reasonable precautions that we have taken;
- if a technical malfunction known to you prevented the transaction;
- or any other exceptions stated in this EFT Agreement.

**Business Day**

For purposes of this EFT Agreement, our business days are Monday through Friday. Holidays are not included.

**Arbitration**

The Card Account is governed by the Cardmember Agreement contained herein. The Arbitration provision contained within that agreement applies to this EFT Agreement. Please refer to that provision as you read this EFT Agreement.

**Privacy**

Electronic funds transfers you initiate pursuant to this EFT Agreement are covered by the American Express Privacy Policy, a copy of which was given to you together with your American Express Card. To view our Privacy Policy online, please visit americanexpress.com.

**How to Contact Us**

If for any reason you wish to contact us about the Program, about your participation in the Program, or about transactions relating to the Program, write or call us as follows:

Address: American Express Travel Related Services Company, Inc., Electronic Funds Services, P.O. Box 297815, Ft. Lauderdale, FL 33329-7815 or e-mail us by clicking on the Customer Service link online at www.americanexpress.com.

Telephone: 1-800-CASH-NOW, 24 hours a day, seven days a week.

**In Case of Errors or Questions About Your Transactions**

Write or call us at the number or address given above as soon as you can if you think your statement or receipt is wrong or if you need more information about a transaction listed on your statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. If you are delayed in contacting us

due to extenuating circumstances (such as a hospital stay), we may extend this 60 days for a reasonable time.

1. Tell us your name and Card Account number.
2. Describe the error or the transaction you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days* from the date you notified us.

We will tell you the results of our investigation within 10 business days* after we hear from you and we will correct any error promptly. If we need more time, however, we may take up to 45 calendar days to investigate your complaint or question. If we decide to do this we will assure that your bank recredits your Bank Account within 10 business days* for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days* following your oral notification, we may not recredit your Bank Account.

For transactions initiated outside the United States (and in the event there are transfers resulting from any point-of-sale debit card transactions), we will have 90 calendar days to complete our investigation, unless otherwise required by law.

If notification of an error is received within 30 calendar days after your Bank Account is opened, we will have 20 business days to provide you with the results of our investigation and correct any error and 90 days to complete the investigation.

If we determine that there was no error, we will send you a written explanation within three business days after we finish our investigation. Upon your request we will provide you with copies of the documents that we used in our investigation. If we have provisionally recredited your Bank Account during the investigation and determine that there was no error, we will notify you of the date on which we will redebit your Bank Account, and the amount to be debited. You should make certain that your Bank Account contains sufficient funds to cover this debit. If it does not, we have the right to charge such amount to the Card Account or to collect the amount from you. If this happens, we may cancel your right to participate in the Program.

**Termination**

We, or any bank or financial institution participating in the Program, may add to or remove from the Program any or all ATMs or extend or limit the services provided at any location without notifying you beforehand. In addition, we may discontinue the Program at any time.

Your right to participate in the Program will be terminated or suspended if the Card Account is cancelled or suspended, if you cancel the authorization you have given your bank to directly charge checks to your Bank Account, if the Bank Account from which payment will be made when you make transactions under the Program is closed to withdrawal transactions by us or our agents, if your participation in the Program is inactive for 18 consecutive months or more, or if the Card Account is no longer in good standing.

In addition to the foregoing, we may revoke your right to participate in the Program, at any time, at our sole discretion, with or without cause, subject to applicable law. If we do so, we will send you written notice, but we may not send you the notice until after the revocation. We also have the right to deny authorization for any requested transaction, at any time, at our sole discretion, with or without cause, and without giving you notice, subject to applicable law. You may terminate your participation in the Program but you must do so by writing to us at the address described in the Section of this EFT Agreement entitled How to Contact Us.

**Prior Agreements and Assignments**

This EFT Agreement supercedes all prior agreements you may have with us relating to the Program. We have the right to assign this EFT Agreement to a subsidiary or affiliate company at any time.

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.

**Note for Massachusetts Residents**

General Disclosure Statement: Any documentation provided to you which indicates that an electronic funds transfer was made shall be admissible as evidence of such

transfer and shall constitute prima facie proof that such transfer was made.

The initiation by you of certain electronic funds transfers from your Bank Account will, except as otherwise provided in this EFT Agreement, effectively eliminate your ability to stop payment of the transfers.

UNLESS OTHERWISE PROVIDED IN THIS EFT AGREEMENT, YOU MAY NOT STOP PAYMENT OF ELECTRONIC FUNDS TRANSFERS; THEREFORE, YOU SHOULD NOT EMPLOY ELECTRONIC ACCESS FOR PURCHASES OR SERVICES UNLESS YOU ARE SATISFIED THAT YOU WILL NOT NEED TO STOP PAYMENT.

Disclosure of Account Information to Third Parties: If you give us your written authorization to disclose information about you, your Card Account or the transactions that you make to any person, that authorization shall automatically expire 45 days after we receive it.

Optional Limit on Obtaining Cash: You have the option to request that we limit the total amount of cash that you may obtain from ATMs in a single day to $50. If you elect this option we will take all reasonable steps to comply with your request.

**For Your Safety When Using an ATM, Please Observe the Following:**

If the ATM you are using is inside a building, close the entry door completely upon entering. Individuals who have a legitimate need to gain access to an ATM should have a card. There may be occasions when non-authorized users gain access to an ATM machine that are beyond an individual's control.

Put withdrawn cash in a secure place before stepping away from the ATM. Be aware of your surroundings. If you believe you are being watched or followed, cancel your transaction, then go to a well-populated area. If necessary, call the local police.

Do not write your PIN number on or near the Card. Do not give your PIN number to anyone else. In case of an emergency, call 911.

Complaints concerning security at an American Express Dispenser should be directed to the address listed under How to Contact Us.

Note: Activity is being recorded by hidden cameras at ATM locations in New York City and/or as required by local regulations.

*For Massachusetts residents: 10 calendar days instead of business days.

**Return Protection**

**Program Description**

Return Protection offers you guaranteed product satisfaction on designated items purchased entirely with an eligible American Express Card. If you try to return a designated item within 90 days from the date of purchase and the merchant won't take it back, American Express will refund the full purchase price, up to $300 per item, excluding shipping and handling, and up to a maximum of $1,000 annually per Cardmember Account.

**How to File a Return Protection Request**

Once you have verified that the merchant will not accept the designated item, call 1-800-297-8019 within 90 days of the purchase date to notify us of your request. Within 30 days from the date of your initial call, we need to receive the following:

- Original store receipt
- American Express Card record of charge
- Any other items deemed reasonable by us to process your request

Once your request has been approved, you will be instructed to send the purchased item to us within 30 days. Please keep a record of your shipping statement, as you will need to provide proof of shipping in the event that your designated items are not received. You are responsible for the shipping and handling charges for the item. The refund – up to $300 per item and up to a maximum of $1,000 per Cardmember per year – will be reimbursed to you.

**Limitations**

Purchases must be made in the United States and charged in full on your Card. A refund will not be paid if, on the date we receive your Return Protection Request, or on the date that would-be payment, any amount on your Card Account is past due for one or more billing cycle(s) or your Card is canceled.

FDR 920608

Refunds are limited to $300 per designated item, and $1,000 annually per Cardmember Account. The item must be in "like new" condition (not visibly used or worn) and in working order to be eligible. An item is eligible if it may not be returned by the Cardmember to the merchant from which it was originally purchased. Any item purchased from a merchant that has an established return/ satisfaction guarantee program which is greater than or equal to the terms of Return Protection, and provides coverage for claim, will not be eligible for a Return Protection Refund. Product rebates, discounts or money received from lowest price comparison programs will be deducted from the original cost of the item. The maximum you will be compensated will not exceed the manufacturer's suggested retail price.

Items not eligible for a refund are: animals and living plants; one-of-a-kind items (including antiques, artwork, and furs); limited edition items; going-out-of-business sale items; consumable or perishable items with limited life spans (such as perfume, light bulbs, non-rechargeable batteries); jewelry (including, but not limited to, loose gems, precious stones, metals, and pearls); watches; services and additional costs (such as installation charges, warranties, shipping, or memberships); rare and precious coins; used, altered, rebuilt and refurbished items; custom-built items, cellular phones; pagers; compact discs; digital video discs; music discs; audiotapes; videotapes; computer software; firmware (such as console games, Nintendo, etc.); maps; books of any kind; health care items (such as blood pressure machines and diabetes equipment); formal wear; tickets of any kind; motorized vehicles (such as cars, trucks, motorcycles, boats, or airplanes) and their parts; land and buildings; firearms; ammunition; negotiable instruments (such as promissory notes, stamps and travelers checks); cash and its equivalent; and items permanently affixed to home, office, vehicles, etc., (such as garage door openers, car alarms).

If you have any questions regarding a Return Protection Request or the Return Protection program, please call our Customer Service Department at 1-800-297-8019.

Extended Warranty

The information below summarizes the terms and conditions of the Extended Warranty plan (formerly the Buyer's Assurance Plan). Extended Warranty is underwritten by AMEX Assurance Company, Administrative Office, Green Bay, WI. Coverage is determined by the terms, conditions, and exclusions of Policy AX0953 and is subject to change with notice. This document does not supplement or replace the Policy. Please call us at the number on back of your American Express Card for a complete copy of your terms and conditions. Extended Warranty will extend the terms of the original manufacturer's warranty for a period of time equal to the duration of the original manufacturer's warranty, up to one (1) additional year (Centurion Cardmembers up to three (3) additional years) on warranties of five (5) years or less that are eligible in the United States of America.

Description of Benefits

Where a loss has occurred during this plan's extended warranty time period of up to one (1) additional year (Centurion Cardmembers up to three (3) additional years), we will provide a benefit equal to the coverage of the original manufacturer's warranty on warranties of up to five (5) years. We will pay up to the actual amount charged to your account for the product for which a loss is claimed, but not to exceed $10,000. If the product also is covered by a purchased service contract, this plan's extended warranty time period begins at the end of the service contract and extends the original manufacturer's warranty for a period of time equal to that warranty, up to one (1) additional year (Centurion Cardmembers up to three (3) additional years). If the combined coverage of the original manufacturer's warranty and the purchased service contract exceed five (5) years, the product purchased is not eligible under this plan and no coverage applies. Extended Warranty does not reimburse for shipping and handling expenses or installation, assembly, professional advice, maintenance or other service charges. If you experience more than one loss in a calendar year, we will pay an amount not to exceed $50,000 for all losses in a calendar year. Our benefit payment will not include any product rebates, discounts or money received from the lowest price comparison programs that reduced the original cost of the property.

Form Numbers
EW-DOC-CCSG1 02/07, EW-DOC-CCSG2 02/07, EW-DOC-OSBN1 02/07, EW-DOC-OSBN2 02/07

Applicable for Residents of the State of Alaska
Form Number: PP/EW-RDR1-AK 06/07

Applicable for Residents in the States of Arizona and Indiana
Form Numbers: EW-IND-CCSG1 07/07, EW-IND-CCSG2 07/07, EW-IND-OSBN1 07/07, EW-IND-OSBN2 07/07

Applicable for Residents of the State of Kentucky
Form Number: PP/EW-RDR1-KY 05/07-In the Termination or Cancellation section: The company has the right to cancel the policy at any time by sending a written notice at least seventy-five (75) days in advance to you at your last known address.

Applicable for Residents of the State of Oklahoma
Form Number: PP/EW-RDR1-OK 07/07-The following is added to your Description of Coverage: WARNING: Any

Exclusions

Benefits are not payable if the loss for which coverage is sought was directly or indirectly, wholly or partially, contributed to or caused by: 1. any physical damage, including, but not limited to, damage as a direct result of natural disaster or a power surge, except to the extent the original manufacturer's warranty covers such damage; 2. mechanical failure covered under product recall; or 3. fraud or abuse or illegal activity of any kind by the cardmember.

Purchases Not Covered

The following are not covered: 1. products covered by an unconditional satisfaction guarantee; 2. motorized vehicles (including, but not limited to, passenger cars, trucks, motorcycles, boats, airplanes) and their parts, subject to high risk, combustible, wear and tear or mileage stipulations (including, but not limited to, batteries, carburetors, pipes, hoses, pistons, brakes, tires, or mufflers); 3. motorized devices and their parts used for agriculture, landscaping, demolition or construction; 4. motorized devices and their parts which are permanent additions or fixtures to a residential or commercial building; 5. business fixtures, including, but not limited to, air conditioners, refrigerators, heaters; 6. land or buildings; 7. consumable or perishable items; 8. animals or living plants; 9. more than one article in a pair or set. Coverage will be limited to no more than the value of any particular part or parts, unless the articles are unusable individually and cannot be replaced individually, regardless of any special value they may have had as part of a set or collection; 10. items still under installment billing; 11. additional service contract or extended warranty coverage for a computer, computer component or part that you buy which already comes with an original United States of America manufacturer's warranty, unless such coverage is provided and administered by the original manufacturer; and 12. items purchased for resale, professional, or commercial use (this does not apply to OPEN Cardmembers).

General Provisions

Excess Coverage

If any loss under this policy is insured under any other valid and collectible policy, then this policy shall cover such loss, subject to its exclusions, conditions, provisions and other terms herein, only to the extent that the amount of such loss is in excess of the amount of such other insurance which is payable or paid.

Termination or Cancellation

Coverage will cease on the earliest of the following: 1. the date you no longer maintain a permanent residence in the 50 United States of America, the District of Columbia, Puerto Rico or the U.S. Virgin Islands; 2. the date we determine that you or someone on your behalf intentionally misrepresented or fraud occurred; 3. the date the policy is cancelled; 4. the date you are no longer a cardmember; 5. the date your account ceases to be current and in good standing; or 6. the date the plan is not available in the location where you maintain a permanent residence. Termination or cancellation of coverage will not prejudice any claim originating prior to termination or cancellation subject to all other terms of the policy. The company has the right to cancel the policy at any time by sending a written notice at least forty five (45) days in advance to you at your last known address. The notice will include the reason for cancellation.

person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

Applicable for Residents of the State of Oregon
Form Number EW-RDR1-OR 05/07-In the Exclusions section the following is removed: 3. fraud or abuse or illegal activity of any kind by the cardmember;

Applicable for Residents of the State of South Dakota
Form Number: PP/EW-RDR1-SD 05/07

Applicable for Residents of the State of Texas
Form Number: EW-IND-TX 07/07

Applicable for Residents of the State of Vermont
Form Number: PP/EW-RDR1- VT 05/07

Purchase Protection

Description of Coverage

Underwritten by AMEX Assurance Company, Administrative Office, 480 Pilgrim Way, Suite 1400, Green Bay, WI 54304

Purchase Protection provides coverage for Your purchases for ninety (90) days from the date of purchase when You charge any portion of the price of the purchased item to Your Account. You will be reimbursed only for the amount charged to Your Account. (See Description of Benefits section.)

Definitions

Certain words used in this Description of Coverage are capitalized throughout and have special meanings. Wherever used herein, the singular shall include the plural, the plural shall include the singular, as the context requires.

Account means Your American Express Card Account.

Cardmember means a person who has been issued a United States of America based proprietary American Express Card, which is Current and in Good Standing, and who has a Permanent Residence in the 50 United States of America, the District of Columbia, Puerto Rico or the U.S. Virgin Islands.

Covered Incident means the theft of, or damage, whether by accident or vandalism, to any one item of property purchased worldwide as a gift or for personal or business use and charged to Your Account.

Company means AMEX Assurance Company, and its duly authorized agents.

Current and in Good Standing means a Cardmember Account for which the monthly minimum requirement has been paid prior to the date in which the claim is payable.

Master Policyholder means American Express Travel Related Services Company, Inc.

Permanent Residence means the one primary dwelling place where the Cardmember resides and to which they intend to return.

Plan means the Policy and the benefits described therein.

Platinum Cardmember means a Cardmember who has a Platinum Charge Card (required to be paid in full monthly), a Corporate Platinum Card, or a Fidelity American Express Platinum Card. Any other Card which may reference the Platinum name or has Platinum colored plastic will not receive higher coverage limits or benefits.

Policy means the Group Insurance Master Policy (AX0951) issued to American Express Travel Related Services Company, Inc.).

We, Us, Our means the Company.

You, Your means the Cardmember.

Description of Benefits

We will pay You the expense charged to Your Account up to $1,000 for any one Covered Incident and up to $50,000 for all Covered Incidents during a calendar year. Purchase Protection provides benefits, for ninety (90) days from the date of purchase, if a Covered Incident occurs with respect to property You purchased and charged to Your Account. Our benefit payment will not include shipping and handling expenses or installation, assembly, professional advice, maintenance or other service charges or any product rebates, discounts or money received from lowest price comparison programs that reduced the original cost of the property.

Our payment of any eligible benefit amount is further contingent upon Your Account being Current and in Good Standing.

Only a Cardmember has a legal and equitable right to any insurance benefit that may be available under this Plan.

FDR 92060R

6

**Exclusions**

Benefits are not payable if the loss for which coverage is sought was directly or indirectly, wholly or partially, contributed to or caused by:

1. war or any act of war, whether declared or undeclared;
2. any activity directly related to and occurring while in the service of any armed military force of any nation state recognized by the United Nations;
3. participation in a riot, civil disturbance, protest or insurrection;
4. violation of a criminal law, offense or infraction;
5. natural disasters, including, but not limited to, hurricanes, floods, tornados, earthquakes or any other event in the course of nature, that occurs at the same time or in separate instances;
6. fraud or abuse or illegal activity of any kind by the Cardmember;
7. confiscation by any governmental authority, public authority, or customs official;
8. negligent failure of a duty to care by any third party in whose possession the property purchased by a Cardmember has been temporarily placed;
9. not being reasonably safeguarded by You;
10. theft from baggage not carried by hand and under Your personal supervision or under the supervision of a traveling companion known by You;
11. damage through alteration (including, but not limited to, cutting, sawing and shaping);
12. normal wear and tear, inherent product defect or manufacturer's defects or normal course of play;
13. damage or theft while under the care and control of a common carrier;
14. food spoilage; or
15. leaving property at an unoccupied construction site.

For residents of Washington, the first paragraph of this section is removed and replaced with the following: We will not pay for loss caused by any of the excluded events described below. Loss will be considered to have been caused by an excluded event if the occurrences of that event directly and solely results in loss, or initiates a sequence of events that result in loss, regardless of the nature of any intermediate or final event in that sequence.

**Purchases Not Covered**

The following purchases are not covered:

1. travelers checks, tickets of any kind, negotiable instruments (including, but not limited to, gift certificates, gift cards and gift checks), cash or its equivalent;
2. animals or living plants;
3. rare stamps or coins;
4. consumable or perishable items with limited life spans (including, but not limited to, perfume, light bulbs, batteries);
5. antique or previously owned items;
6. motorized vehicles and watercraft, aircraft, and motorcycles or their motors, equipment, parts or accessories;
7. stolen or damaged property consisting of articles in a pair or set. Coverage will be limited to no more than the value of any particular part or parts, unless the articles are unusable individually and cannot be replaced individually, regardless of any special value they may have had as part of a set or collection;
8. items purchased for resale, professional, or commercial use;
9. permanent household and/or business fixtures, including, but not limited to, carpeting, flooring and/or tile;
10. business fixtures, including, but not limited to, air conditioners, refrigerators, heaters; and
11. hospital, medical and dental equipment and devices.

**Claims Provisions**

If You experience a loss for which You believe a benefit is payable under this Plan, You must provide both Notice of Claim and Proof of Loss.

To insure prompt processing of Your claim, report any theft or damage immediately following the date of the Covered Incident, including for gifts purchased with the Card. Retain Your receipts and Your damaged property (if applicable) until the claim process is complete.

**Notice of Claim**

Notice of Claim should be provided to Us within thirty (30) days of the loss. You may contact Us by calling toll-free stateside 1-800-322-1277 or, if from overseas, by calling collect

1-303-273-6498. You may also write to Us at Purchase Protection, PO Box 402, Golden, CO 80402-0402.

Failure to provide Notice of Claim within thirty (30) days will not invalidate a claim or reduce any benefit payment that may be found to be eligible, if it can be shown that it was provided as soon as reasonably possible. At the time You provide Us with Notice of Claim, We will assist You with Your Proof of Loss by providing You with instructions and/or documents, which You may have to complete and return to Us. You are required to cooperate with Us and provide documentation as requested by Us which is required and necessary to process Your claim and determine if benefits are payable.

For residents of Missouri, no claim will be denied based upon Your failure to provide notice within such specified time, unless this failure operates to prejudice the right of Us.

**Proof of Loss**

Proof of Loss requires You to send Us all the information We request, at Your expense, in order that Your claim may be evaluated and that We may make a determination as to whether the claim may be paid. You must provide Us with satisfactory Proof of Loss within thirty (30) days (for residents of North Dakota sixty (60) days) after We have provided You with instructions and/or a claim form in response to Your Notice of Claim or Your claim may be denied. Your Proof of Loss documentation may be mailed to Us at the same address provided above for mailing Your Notice of Claim. We reserve the right to request all the information We deem necessary to determine that Your claim is payable, and We will not consider that We have received complete Proof of Loss until the information We have requested is received.

Proof of Loss may require documentation consisting of, but not necessarily limited to, the following:

1. a Purchase Protection Claim Form;
2. the original itemized store receipt;
3. the insurance declaration forms for Your other sources of insurance or indemnity (e.g., homeowner's or renter's insurance);
4. a photograph of and/or repair estimate for the damaged property; and
5. for theft and vandalism claims, a report regarding the stolen or vandalized property must be filed with the appropriate authority before You call to file a claim under Purchase Protection.

No payment will be made on claims not substantiated in the manner required by Us.

If all required documentation is not received within thirty (30) days (for residents of North Dakota sixty (60) days) of the date of the Covered Incident (except for documentation which has not been furnished for reasons beyond Your control), coverage may be denied. It is Your responsibility to provide all required documentation We request.

You may be required to send in the damaged property at Your expense for further evaluation of Your claim. If requested, You must send in the damaged property within thirty (30) days (for residents of North Dakota sixty (60) days) from the date of Our request to remain eligible for coverage.

**Payment of Claim**

A claim for benefits provided by this Plan will be paid upon Our receipt and review of Your complete Proof of Loss documentation and Our determination that a claim is payable according to the terms of the Plan.

Any payment made by Us in good faith pursuant to this or any other provision of this Plan will fully discharge Us to the extent of such payment.

If other insurance is available to You which provides the same or similar coverage as that provided by this Plan, this Plan becomes excess and We will pay only that portion of the Covered Incident which is not reimbursed by other insurance up to Our limits, as provided under the Description of Benefits section.

**General Provisions**

**Change of Permanent Residence**

If the change is to a different state, Your Policy provisions may be adjusted to conform to the requirements of that state.

**Clerical Error**

A clerical error made by the Company will not invalidate insurance otherwise validly in force nor continue insurance not validly in force.

**Conformity with State and Federal Law**

If a Plan provision does not conform to applicable provisions of State or Federal law, the Plan is hereby amended to comply with such law.

**Entire Contract; Representations; Change**

This Description of Coverage, the Policy and any applications, endorsements or riders make up the entire contract. Any statement You make is a representation and not a warranty. This Description of Coverage may be changed at any time by written agreement between the Master Policyholder and the Company. Only the President, Vice-President or Secretary of AMEX Assurance Company may change or waive the provisions of this Description of Coverage. No agent or other person may change the Description of Coverage or waive any of its terms. This Description of Coverage may be changed at any time by providing notice to You. A copy of the Policy will be maintained and kept by the Master Policyholder and may be examined at any time.

**Excess Coverage**

If any loss under this Policy is insured under any other valid and collectible policy, then this Policy shall cover such loss, subject to its exclusions, conditions, provisions and other terms herein, only to the extent that the amount of such loss is in excess of the amount of such other insurance which is payable or paid.

**Fraud**

If any request for benefits made under the Plan is determined to be fraudulent, or if any fraudulent means or devices are used by You or by anyone acting on Your behalf to obtain benefits, all benefits will be forfeited.

We do not provide coverage to a Cardmember who, whether before or after a loss, has: 1. concealed or misrepresented any fact upon which we rely, if the concealment or misrepresentation is material and is made with the intent to deceive; or 2. concealed or misrepresented any fact if that fact misrepresented contributes to the loss.

**Legal Actions**

No legal action may be brought to recover against this Plan until sixty (60) days after Proof of Loss has been received by Us. No such action may be brought after three (3) years (for residents of Arkansas five (5) years and residents of Missouri ten (10) years) from the time written Proof of Loss is required to be given.

If a time limit of this Plan is less than allowed by the laws of the state where You live, the limit is extended to meet the minimum time allowed by such law.

**Right of Recovery**

If We make a payment to You under this Plan and You recover an amount from another, equal to or less than Our payment, You shall hold in trust for Us the proceeds of the recovery and reimburse Us to the extent of Our payment. If Our payments exceed the maximum amount payable under the benefits of this Plan, We have the right to recover from You any amount exceeding the maximum amount payable.

**Subrogation**

In the event of any payment under this Policy, We shall be subrogated to the extent of such payment to all Your rights of recovery. You shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable Us to effectively bring suit or otherwise pursue subrogation rights in Your name. You shall do nothing to prejudice such subrogation rights.

We shall be entitled to a recovery as stated in these provisions only after You have been fully compensated for damages by another party.

For residents of Louisiana, the Right of Recovery, Subrogation and Excess Coverage sections are revised to reflect: If the Company makes any payment under this Policy and the Cardmember has the right to recover damages from another, the Company shall be subrogated to that right. However, the Company's right to recover is subordinate to the Cardmember's right to be fully compensated.

**Termination or Cancellation**

Coverage will cease on the earliest of the following: 1. the date You no longer maintain a Permanent Residence in the 50 United States of America, the District of Columbia, Puerto Rico or the U.S. Virgin Islands; 2. the date We determine that You or someone on Your behalf intentionally misrepresented or fraud occurred; 3. the date the Policy is cancelled; 4. the date You



are no longer a Cardmember; 5. the date Your Account ceases to remain Current and In Good Standing; or 6. the date the Plan is not available in the location where You maintain a Permanent Residence.

Termination or Cancellation of coverage will not prejudice any claim originating prior to termination or cancellation subject to all other terms of the Policy.

The Company has the right to cancel the Policy at any time by sending a written notice at least forty five (45) days in advance to You at Your last known address. The notice will include the reason for cancellation.

**Important Additional Information For You**

For those eligible and enrolled in the Membership Rewards® program, benefits are also paid when the purchased property is received through the redemption of a Membership Rewards redemption certificate. Payment or credit will not exceed the original assigned value of the property received through redemption of a Membership Rewards redemption certificate up to the stated limits, excluding shipping and handling expenses. Benefits will not be paid when a Membership Rewards redemption certificate has been transferred to a non-eligible Cardmember or non-Cardmembers.

This Description of Coverage replaces any other Description of Coverage that You may have previously received for Purchase Protection.

This Description of Coverage is an important document. Please read it and keep it in a safe place.

IN WITNESS WHEREOF, We have caused this Description of Coverage to be signed by Our officers:

Joy A. Hanson, President        John M. Collins, Secretary
AMEX Assurance Company     AMEX Assurance Company
PP-DOC-CCSG1 02/07

**Applicable for Residents of the State of Kentucky**

In the Termination or Cancellation section the following is removed:

The Company has the right to cancel the Policy at any time by sending a written notice at least forty five (45) days in advance to You at Your last known address. The notice will include the reason for cancellation.

And replaced with the following:

The Company has the right to cancel the Policy at any time by sending a written notice at least seventy-five (75) days in advance to You at Your last known address. The notice will include the reason for cancellation.

PP/EW-RDR1-KY 05/07

**Applicable for Residents of the State of Oregon**

In the Exclusions section the following are removed: 4. violation of a criminal law, offense or infraction; 6. fraud or abuse or illegal activity of any kind by the Cardmember;

The Proof of Loss section is hereby removed in its entirety and replaced with the following:

Proof of Loss

Proof of Loss requires You to send Us all the information We request, at Your expense, in order that Your claim may be evaluated and that We may make a determination as to whether the claim may be paid. You must provide Us with satisfactory Proof of Loss within ninety (90) days after We have provided You with instructions and/or a claim form in response to Your Notice of Claim or Your claim may be denied. Your Proof of Loss documentation may be mailed to Us at the same address provided above for mailing Your Notice of Claim. We reserve the right to request all the documentation We deem necessary to determine that Your claim is payable, and We will not consider that We have received complete Proof of Loss until the information We have requested is received.

Proof of Loss may require documentation consisting of, but not necessarily limited to, the following: 1. Purchase Protection Claim Form; 2. the original itemized store receipt; 3. the insurance declaration forms for Your other sources of insurance or indemnity (e.g., homeowner's or renter's insurance); 4. a photograph of and/or repair estimate for the damaged property; and 5. or theft and vandalism claims, a report regarding the stolen or vandalized property must be filed with the appropriate authority before You call to file a claim under Purchase Protection.

No payment will be made on claims not substantiated in the manner required by Us.

FDR 920608

---

If all required documentation is not received within ninety (90) days of the date of the Covered Incident (except for documentation which has not been furnished for reasons beyond Your control), coverage may be denied. It is Your responsibility to provide all required documentation We request.

You may be required to send in the damaged property at Your expense for further evaluation of Your claim. If requested, You must send in the damaged property within ninety (90) days from the date of Our request to remain eligible for coverage.

PP-RDR1-OR 05/07

**Applicable for Residents of the State of South Dakota**

The Legal Actions section is hereby removed in its entirety and replaced with the following:

Legal Action

No legal action may be brought to recover against this Plan until sixty (60) days after Proof of Loss has been received by Us. No such action may be brought after six (6) years from the time Proof of Loss is required to be given.

PP/EW-RDR1-SD 05/07

**Applicable for Residents of the State of Vermont**

In the Termination or Cancellation section the following is removed:

The Company has the right to cancel the Policy at any time by sending a written notice at least forty five (45) days in advance to You at Your last known address. The notice will include the reason for cancellation.

And replaced with the following:

The Company has the right to cancel the Policy by sending a written notice at least forty five (45) days in advance to You at Your last known address. The notice will include the reason for cancellation.

PP/EW-RDR1-VT 05/07

**Applicable for Residents of the State of Alaska**

The opening paragraph in the Exclusion section is removed in its entirety and replaced with the following which is added and made part of the Description of Coverage:

These exclusions do not apply if the dominate cause of a loss is a risk or peril that is not otherwise excluded. Benefits are not payable if the loss for which coverage is sought was directly or indirectly, wholly or partially, contributed to or caused by:

The Legal Actions section is hereby removed in its entirety and replaced with the following which is added and made part of the Description of Coverage:

Legal Actions

No legal action may be brought to recover against this Plan until sixty (60) days after Proof of Loss has been received by Us. No such action may be brought after three (3) years from the time Proof of Loss is required to be given. If there are any claims the three year timeframe does not begin to run until after the claim has been denied.

PP/EW-RDR1-AK 06/07

**Applicable for Residents of the State of Oklahoma**

The following is added to your Description of Coverage:

WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

PP/EW-RDR1-OK 07/07

$100,000 · $250,000 · $500,000 · $1,500,000
Travel Accident Insurance

Underwritten by AMEX Assurance Company.
Administrative Office, 400 Pilgrim Way, Suite 1400, Green Bay, WI 54304 (Herein called the Company)

**Description of Coverage**

Covered Persons: A person shall be a Covered Person under the Blanket Master Group Policy AX0948 (the "Policy") only if:

1. he or she is:
   a. For $100,000 coverage, a Basic or Additional Cardmember who has any of the following Cards, or the extended payment account offered in conjunction with any of the following, issued by American Express Travel Related Services Company, Inc. or its participating subsidiaries (Express™) in his or her name: American Express® Rewards Green Card, American Express® Preferred Rewards Green

---

Card, American Express® Rewards Gold Card, American Express® Preferred Rewards Gold Card, American Express® Business Gold Card, American Express® Cash Rebate Card, American Express® Community Business, American Express® Credit Card, American Express® Investment Management Account Gold Card, American Express® Costco Cash Rebate Credit Card, The American Express® Costco Card (IDC); American Express® Costco Business Card, Bank of Hawaii Credit Card from American Express, Bank of Hawaii Gold Credit Card from American Express, Best Rate Card, Blue for Business from American Express, Blue for Students™, Blue from American Express, Business Capital Line from OPEN from American Express™, Business Gold Card from OPEN from American Express™, American Express® Business Management Account from OPEN from American Express™, Business Membership Rewards® Card, American Express® Business Purchase Account from OPEN from American Express™, Buyer's Bonus Card, Continental OnePass Credit Card from American Express, Corporate Card from OPEN from American Express™ including beginning with Account number 37134, American Express® Business Cash Rebate Card from OPEN from American Express™, Corporate Costco Card from OPEN from American Express™, Delta SkyMiles® Business Credit Card from OPEN from American Express™, Gold Delta SkyMiles® Business Credit Card from OPEN from American Express™, Delta SkyMiles® Credit Card, Delta SkyMiles® Options Card, American Express Executive Business Card from OPEN from American Express™, Gold American Express Portfolio Credit Card, Gold Card, Gold Delta SkyMiles® Credit Card, Gold Senior Card, Gold Student Card, Membership Rewards® Credit Card from American Express, Membership Rewards Options℠ Credit Card from American Express, National Multiple Sclerosis Credit Card, Optima® Card Accounts, Optima® Cash Reward Card, Optima® Gold Card, Optima® Platinum Card, Optima® Platinum Cash Rebate Card, Optima® Platinum Preferred Card, Personal Card, Personal Choice Card, Personal Senior Card, Personal Student Card, Platinum Cash Rebate Card, Platinum Delta SkyMiles™ Credit Card, Platinum ShopRite Credit Card from American Express, Starwood Preferred Guest Credit Card from American Express, The American Express® Golf Card, The Fidelity American Express® Card, The Fidelity American Express® Gold Card, The Hilton HHonors® Platinum Credit Card from American Express, Binghamton Savings Bank Gold Credit Card from American Express, Binghamton Savings Bank Business Credit Card from American Express, The New York Knicks Card from American Express, The New York Rangers Card from American Express, The Small Business Card from American Express; or

   b. For $250,000 coverage, a Basic or Additional Cardmember who has a Rewards Plus Gold Card, Corporate Rewards Plus Gold Card or the extended payment account offered in conjunction issued by American Express Travel Related Services Company, Inc. or its participating subsidiaries ("American Express") in his or her name; or

   c. For $500,000 coverage, a Basic or Additional Cardmember who has a Platinum Card®, Fidelity American Express Platinum Card®, American Express® Investment Management Account Platinum Card, American Express Business Platinum Card® from OPEN from American Express™, Lexus Platinum Card®, American Express Platinum Financial Services Card, LAC/IDC Platinum Card or the extended payment account offered in conjunction issued by American Express Travel Related Services Company, Inc. or its participating subsidiaries ("American Express") in his or her name on a Platinum Card Account; or

   d. For $1,500,000 coverage, a Basic or Additional Cardmember who has a Centurion Card, American Express® Business Centurion Card® from OPEN from American Express™ or the extended payment account offered in conjunction issued by American Express Travel Related Services Company, Inc. or its participating subsidiaries ("American Express") in his or her name on a Centurion Card Account; or

   e. the spouse, Domestic Partner or dependent child under age 23 of any eligible person described in (a), (b), (c), (d) above; and

2. his or her Permanent Residence is in the 50 United States, District of Columbia, Puerto Rico, or U.S. Virgin Islands.

Definitions

Accident whenever used in this Policy means an unexpected event which causes Injury and shall also include

exposure resulting from a mishap on a Common Carrier Conveyance in which the Covered Person is traveling.

Additional Cardmember means any individual who has received an American Express Card at the request of a Basic Cardmember for use in connection with the Basic Cardmember's American Express Card account.

American Express Card shall mean, unless otherwise specified, any of the Cards or Accounts listed above under Covered Persons.

Basic Cardmember means any individual who has asked American Express to issue one or more American Express Cards and who has an American Express Card account.

Common Carrier Conveyance means an air, land or water vehicle (other than a rental) licensed to carry passengers for hire and available to the public.

A trip is a Covered Trip if:
1. it is a trip taken by the Covered Person between the point of departure and the final destination as shown on the Covered Person's ticket or verification issued by the Common Carrier Conveyance; and
2. the Covered Person's entire fare for such trip on that Common Carrier Conveyance has been actually charged to a specific American Express Card account prior to any Injury.

Domestic Partner means a person of the same or opposite gender who meets the following requirements:
1. has shared a residence with the Basic or Additional Cardmember for the last 12 months and plans to continue doing so;
2. is not married to any other person and is not committed to another Domestic Partner;
3. is at least 18 years old;
4. is not related to the Basic or Additional Cardmember by blood closer than would bar marriage per state law; and
5. is financially interdependent with the Basic or Additional Cardmember and documentation of mutual financial support such as copies of joint home ownership or lease, common bank accounts, credit cards or investments can be supplied.

Injury means bodily injury which:
1. is caused by an Accident which occurs while the Covered Person's insurance is in force under the Policy; and
2. results in Loss insured by the Policy; and
3. creates a Loss directly and independently of all other causes, to such accidental bodily injury.

Permanent Residence means the Covered Person's one primary dwelling place, where the Covered Person permanently resides.

**Benefit Amounts**
*As a benefit of Cardmembership, the Covered Person will receive a benefit level of $100,000 – $250,000 – $500,000 – $1,500,000 depending on the type of American Express Card account used to charge the Common Carrier Conveyance fare for the Covered Trip. Please refer to the Covered Persons section of this Description of Coverage. If you are still unsure what benefit level of coverage applies to your American Express Card, please contact the Customer Service Center toll-free number listed on the back of your Card, also shown on your Card statement.*

**Table of Losses**

| Loss of Life | $100,000 | $250,000 |
|---|---|---|
| Dismemberment | | |
| Loss of both hands or both feet | $100,000 | $250,000 |
| Loss of one hand and one foot | $100,000 | $250,000 |
| Loss of entire sight of both eyes | $100,000 | $250,000 |
| Loss of entire sight of one eye and one hand or one foot | $100,000 | $250,000 |
| Loss of one hand or one foot | $50,000 | $125,000 |
| Loss of entire sight of one eye | $50,000 | $125,000 |

**Table of Losses**

| Loss of Life | $500,000 | $1,500,000 |
|---|---|---|
| Dismemberment | | |
| Loss of both hands or both feet | $500,000 | $1,500,000 |
| Loss of one hand and one foot | $500,000 | $1,500,000 |
| Loss of entire sight of both eyes | $500,000 | $1,500,000 |
| Loss of entire sight of one eye and one hand or one foot | $500,000 | $1,500,000 |
| Loss of one hand or one foot | $250,000 | $750,000 |
| Loss of entire sight of one eye | $250,000 | $750,000 |

Loss as used above with reference to hand or foot means complete and permanent severance through or above the wrist or ankle joint, and as used with reference to eye means the irrecoverable loss of the entire sight of such eye.

$100,000 – $250,000 – $500,000 – $1,500,000 Maximum Indemnity per Covered Person

In no event will multiple American Express Cards obligate the Company to pay for more than one Loss sustained by any one individual Covered Person as a result of any one Accident. The Company's obligation under the Policy will be determined according to the highest amount payable under the specific American Express Card actually used to charge the Common Carrier Conveyance fare for the Covered Trip as stated in the Benefit Amounts.

In no event will a Loss from an Injury while coverage is in force under the Policy AX0948 obligate the Company to pay benefits under Policy AX0949, the Company's Business Travel Accident Insurance policy, in addition to any benefits payable by the Company under the Policy AX0948. The American Express Cards listed under this Policy do not receive coverage under Policy AX0949.

**Accidental Death and Dismemberment Benefit**
The Company will pay the applicable benefit amount as determined from the Table of Losses if a Covered Person suffers a Loss from an Injury while coverage is in force under the Policy; but only if such Loss occurs within 100 days after the date of the Accident which caused the Injury. Benefits will be paid for the greatest Loss. In no event will the Company pay for more than one Loss sustained by the Covered Person as the result of any one Accident.

**Description of Benefits**
Common Carrier Benefit: This Benefit is payable if the Covered Person sustains Injury as a result of an Accident which occurs while riding solely as a passenger in, or boarding, or alighting from or being struck by a Common Carrier Conveyance used on a Covered Trip.

**Exposure and Disappearance**
The Covered Person is unavoidably exposed to the elements because of an Accident on a Covered Trip which results in the disappearance, sinking or wrecking of the Common Carrier Conveyance, and if as a result of such exposure, the Covered Person suffers a Loss for which benefits are otherwise payable under the Policy, such Loss will be covered under the Policy.

If the Covered Person disappears because of an Accident on a Covered Trip which results in the disappearance, sinking or wrecking of the Common Carrier Conveyance, and if the Covered Person's body has not been found within 52 weeks after the date of such Accident, it will be presumed, subject to there being no evidence to the contrary, that the Covered Person suffered Loss of life as a result of Injury covered by the Policy.

**Coverage Requirements**
A Covered Person will be fully insured for benefits under the Policy while taking a trip on a Common Carrier Conveyance only when the fare has been charged to the specific American Express Card. Eligibility for coverage will remain in effect as long as the definition of a Covered Person is met.

**Premiums**
The premium for this coverage is payable by American Express.

**Exclusions**
This Policy does not cover any Loss caused or contributed to by (1) intentionally self-inflicted Injury, suicide or any attempt thereat, while sane; (2) war or any act of war whether declared or undeclared; however, any act committed by an agent of any government, party, or faction engaged in war, hostilities, or other warlike operations provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval or air forces) in the country where the Injury occurs shall not be deemed an act of war; (3) Injury to which a contributory cause was the commission of or attempt to commit an illegal act by or on behalf of the Covered Person or his/her beneficiaries; (4) Injury received while serving as an operator or crew member of any conveyance; (5) Injury received while driving, riding as a passenger in, boarding or alighting from a rental vehicle; or (6) sickness, physical or mental infirmity, pregnancy, or any medical or surgical treatment for such conditions, unless treatment of the condition is required as the direct result of a covered Injury.

**Beneficiary**
A Basic Cardmember may designate a beneficiary or change a previously designated beneficiary for himself/herself and his/her spouse/Domestic Partner and dependent children who are not also Basic or Additional Cardmembers. An

Additional Cardmember may designate a beneficiary for himself/herself and his/her spouse/Domestic Partner and dependent children who are not also Basic or Additional Cardmembers or spouses/Domestic Partners or dependent children of other Cardmembers. No persons other than those stated above may designate or change a previously designated beneficiary. For such designation or change to become effective, a written request, on a form satisfactory to the Company, must be filed with American Express. Such designation or change shall take effect as of the date it was signed by the designator provided that it has been received by American Express, but any payment of proceeds made by the Company prior to receipt of such designation or change shall fully discharge the Company to the extent of such payment.

**Claims**
Notice of claim must be given to AMEX Assurance Company, Claims Administrative Office, PO Box 19020, Green Bay, WI 54307-9020 within 20 days after the occurrence or commencement of any Loss covered by the Policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the claimant to the Company at its Administrative Office, or to any authorized agent of the Company, with information sufficient to identify the Covered Person shall be deemed notice to the Company.

**Payment of Claims**
Benefits for Loss of life of a Covered Person will be paid to the designated beneficiary. Benefits for all other Losses sustained by a Covered Person will be paid to the Covered Person, if living, otherwise to the designated beneficiary. If more than one beneficiary is designated and the beneficiaries' respective interests are not specified, the designated beneficiaries shall share equally. If no beneficiary has been designated, or if the designated beneficiary does not survive the Covered Person, the benefits will be paid to the first surviving class of the following: 1) spouse or Domestic Partner; 2) children, equally per stirpes; and 3) the estate.

In determining such person or persons, the Company may rely upon an affidavit by a member of any of the classes of preference beneficiaries described above. Payment based upon any such affidavit shall fully discharge the Company from all obligations under the Policy unless, before such payment is made, the Company has received at its Administrative Office written notice of a valid claim by some other person(s). Any amount payable to a minor may be paid to the minor's legal guardian.

**Time Limit on Actions**
No action at law or in equity shall be brought to recover under the Policy after the expiration of three years, five years for Centurion Card, Corporate Centurion Card℠ from OPEN from American Express℠, after the time written proof of loss is required to be furnished.

The benefits described herein are subject to all of the terms and conditions of the Policy. This Description of Coverage replaces any prior Description of Coverage which may have been furnished in connection with the Policy.

Joy A. Hanson, President
AMEX Assurance Company
6713-11-01-COM

John M. Collins, Secretary
AMEX Assurance Company

**Notice to Florida Residents Only:** The benefits of the Policy providing your coverage are governed primarily by the laws of a state other than Florida.
1. If, after reading this Description of Coverage, you are still unsure what benefit level of coverage applies to your American Express Card, please contact the Customer Service Center toll-free number listed on the back of your Card, also shown on your Card statement.

**Car Rental Loss and Damage Insurance Plan**

**Description of Coverage**
Car Rental Loss and Damage Insurance provides the Cardmember, if the Cardmember is the primary renter, (as defined below) with insurance coverage for damage to or theft of most Rental Autos when the Cardmember uses the Card (as described below) to reserve and pay for an auto rental from any Commercial Car Rental Company ("Rental Company") other than those located in Australia, Ireland, Israel, Italy,

9

Jamaica, and New Zealand.¹ This coverage is always excess insurance.

Rental Auto means a four-wheeled, two-axle passenger-type motor vehicle, designed for and sold to accommodate private passenger transport on public roads.

**Who is Eligible for Coverage**

You are eligible for coverage if:

1. You are a Basic or Additional Cardmember and an American Express® Card or Optima® Card in association with that Card (the "Card") has been issued to you in your name;

2. You are of an account status and class that is provided Car Rental Loss and Damage Insurance as a benefit of Cardmembership ("Cardmember");

3. Your Card account is billed from a U.S. operating center in U.S. dollars; and

4. You maintain your Permanent Residence within the 50 United States of America, the District of Columbia, Puerto Rico or the U.S. Virgin Islands.

Permanent Residence means the Covered Person's one primary dwelling place where the Covered Person permanently resides and intends to return.

A Personal, Gold, or Rewards Plus Gold Cardmember who is enrolled at an accredited four-year college, university or graduate school in the United States and is receiving student benefits provided as a benefit of Cardmembership is not eligible for benefits under this Policy.

Commercial Car Rental Company or Car Rental Company means any commercial car rental agency which rents Rental Autos.¹ For the purposes of this Description of Coverage, Commercial Car Rental company means "Rental Company".

**How to Activate Coverage**

Coverage for theft of or damage to a Rental Auto is activated when the Cardmember:

1. presents his or her eligible Card to the Rental Company to reserve the Rental Auto by making a reservation or by placing a hold or deposit at the time the Rental Auto is checked out;

2. declines the full Collision Damage Waiver or similar option (CDW), or pays for a partial collision damage waiver, offered by the Rental Company;

3. is the primary renter, which is defined as the Cardmember, who is named on the written agreement with the Rental Company as the person renting and taking control and possession of the Rental Auto ("Primary Renter"); and

4. uses the Card to pay for the entire auto rental from the Rental Company at the time of vehicle return.

Coverage continues in effect while the Cardmember remains in control and possession of the Rental Auto. A Cardmember, who is physically challenged and unable to operate the Rental Auto, may be the Primary Renter if he/she is the Cardmember entering into the rental transaction.

**When Coverage Terminates**

Coverage for theft of or damage to the Rental Auto terminates when:

1. the Rental Company resumes control of the Rental Auto, or 30 consecutive days after the Rental Auto was checked out, whichever is earlier; or

2. the Policy is cancelled.

**Length of Coverage**

Car Rental Loss and Damage Insurance covers eligible Rental Autos when rented under a written rental agreement from a Rental Company for no more than 30 consecutive days.

Note: *In no event shall coverage be provided when the Cardmember rents a Rental Auto beyond 30 consecutive days from the same Rental Company, regardless of whether the original agreement is extended, or a new written agreement is entered into, or a new vehicle is rented.*

Additionally, no coverage will be provided when the Primary Renter rents a Rental Auto for more than 30 consecutive days out of a 60-day period within the same geographic market/location (75 mile radius).

**What is Covered**

Car Rental Loss and Damage Insurance reimburses a Cardmember for payments for damage to or theft of a Rental Auto that the Cardmember is required to make, up to the lesser of: 1) the actual cost to repair the Rental Auto, 2) the wholesale Book value minus salvage and depreciation costs, or 3) the purchase invoice price of the Rental Auto minus salvage and depreciation costs. The coverage also reimburses the Cardmember for reasonable charges (those charges incurred at

the closest facility that are usual and customary in the vicinity in which the loss or disablement took place) imposed by the Rental Company, such as towing or storage and Loss of Use.

Loss of Use means the unavailability of a Rental Auto and consequent loss of revenue by the Rental Company due to damage or theft. Unless otherwise required by law, the Rental Company must submit a fleet utilization log indicating that during such time:

1. no other Rental Auto was available; and

2. there was a demand for a Rental Auto.

Car Rental Loss and Damage Insurance covers no other type of loss. For example, in the event of a collision involving the Cardmember's Rental Auto, damage to any other driver's car or the injury of anyone or anything is not covered.

Note: *This policy does not provide liability or any other coverage such as Uninsured Motorists, benefits under any Worker's Compensation law, Disability benefits law or other mandated Government Plans.*

**What Excess Coverage Means**

Car Rental Loss and Damage Insurance is an excess insurance plan. This means that this excess coverage will reimburse the Cardmember only for losses/expenses not covered by plans, such as a partial collision damage waiver, and personal auto insurance, employer's auto insurance or reimbursement plan or other sources of insurance. When these other plans apply, a Cardmember must first seek payment or reimbursement and receive a determination based on the stated terms of such other Plans, that any such Plans do not provide coverage before this excess coverage will reimburse the Cardmember.

**Vehicles Not Covered**

Car Rental Loss and Damage Insurance does not cover rentals of:

1. expensive cars, which means cars with an original manufacturer's suggested retail price of $50,000 or more when new;

2. exotic cars regardless of year or value, including but not limited to Chevrolet Corvette, Toyota Supra, Mazda RX-7, Dodge Viper and Stealth, Plymouth Prowler, Mitsubishi 3000 GT, Nissan 300 ZX, Jaguar XJS, Acura NSX, Mercedes SL, SLK, S Coupe and E320 Coupe and Convertible, BMW M3, Z3 and 8 Series, Cadillac Allante and all Porsche, Ferrari, Lamborghini, Maserati, Aston Martin, Lotus, Bugatti, Vector, Shelby Cobras, Bentley, Rolls Royce;

3. trucks, pick-ups, cargo vans, custom vans;

4. full-sized vans, including but not limited to, Ford Econoline or Club Wagon, Chevy Van of Sportvan, GMC Vandura and Rally, Dodge Ram Vans and Ram Wagon;

5. vehicles which have been customized or modified from the manufacturer's factory specifications except for driver's assistance equipment for the physically challenged;

6. vehicles used for hire or commercial purposes;

7. mini-vans used for commercial hire;

Note: *Passenger Mini-Vans (not Cargo Mini-Vans) with factory specified seating capacity of 8 passengers or less, including but not limited to, Dodge Caravan, Plymouth Voyager, Ford Windstar and Nissan Quest, are covered when rented for personal or business use only.*

8. antique cars, which means cars that are 20 years old or have not been manufactured for 10 or more years;

9. limousines;

10. full-sized sport utility vehicles, including but not limited to, Chevrolet/GMC Suburban, Tahoe and Yukon, Ford Expedition, Lincoln Navigator, Toyota Land Cruiser, Lexus LX450, Range Rover or full-sized Ford Bronco;

11. sport/utility vehicles when driven "off-road"; and

Note: *Compact sport/utility vehicles, including but not limited to Ford Explorer, Jeep Grand Cherokee, Nissan Pathfinder, Toyota Four Runner, Chevrolet Blazer and Isuzu Trooper and Rodeo are covered when driven on paved roads.*

12. off-road vehicles, motorcycles, mopeds, recreational vehicles, golf or motorized carts, campers, trailers and any other vehicle which is not a Rental Auto.

**Losses Not Covered**

Car Rental Loss and Damage Insurance does not cover losses caused by or contributed to by:

1. operation of the Rental Auto in violation of the terms and conditions of the Rental Company agreement (including but not limited to losses occurring when: a person not permitted to operate the vehicle pursuant to terms of the rental agreement was in possession or control of the vehicle; or driving the vehicle outside of the authorized rental territory);

2. leased or mini-leased vehicles;

3. costs attributed to the Commercial Car Rental Company's normal course of doing business;

4. intentional damage;

5. illegal activity, such as losses where the Rental Auto was used for, or involved in illegal activity or felony;

6. pre-existing conditions, damage or defect;

7. alcohol intoxication on the part of the driver, as defined in the state where the Accident occurred;

8. voluntarily taking any drug or acting under the influence or effect of that drug (unless taken as prescribed or administered by a Doctor);

9. war or military activity;

10. radioactivity;

11. confiscation by authority;

12. wear and tear, including gradual deterioration;

13. damage which is due and confined to freezing, mechanical or electrical breakdown or failure unless such damage results from a theft covered by the Policy;

14. failure to return keys to the Rental Company when the vehicle is stolen;

15. theft or damage to unsecured vehicles;

16. theft of or damage to tires (flats or blowouts), unless damaged by fire, malicious mischief, vandalism, or stolen, unless the loss is coincident with and from the same cause as other loss covered by the Policy; and

17. off-road operation of the vehicle.

Car Rental Loss and Damage Insurance does not cover, and benefits will not be paid for:

1. sales tax related to repair of damages, unless reimbursement of such sales tax is required by law;

2. theft or damage other than the Rental Auto;

3. damage to any property other than the Rental Auto, owner's property, or items not permanently attached to the Rental Auto;

4. the injury of anyone or anything;

5. expenses assumed, waived or paid for by the Rental Company or its insurer;

6. expenses covered by the Cardmember's personal auto insurer, employer or employer's insurer, or authorized driver's insurer;

7. value added tax or similar tax, unless reimbursement of such tax is required by law;

8. diminishment of value;

9. any Rental Auto used for hire or commercial purposes; and

10. depreciation, unless reimbursement for depreciation is required by law.

**How to File a Claim**

Notification of damage, including vandalism, theft, or an accident must be reported to the appropriate law enforcement agency as soon as reasonably possible. This requirement applies regardless of whether the Rental Auto is involved with other vehicles. Failure to notify may result in denial of benefits.

If a loss occurs, a Cardmember should promptly notify the Car Rental Loss and Damage Claims Unit toll free at (800) 338-1670 in the U.S. only or call (440) 914-2950 from other locations worldwide. If the failure of a Cardmember to promptly report a loss prejudices the rights of the Insurer, the claim may be denied.

A representative will answer any questions a Cardmember may have and will send the Cardmember a claim form with instructions. Complete and sign the claim form. Written proof of loss, which includes the claim form and all other requested documentation (listed below), must be received within 60 days following the date of the damage or theft by: American Express Car Rental Loss and Damage Claims Unit, PO Box, 94729, Cleveland, Ohio 44101-4729. If the proof of loss and other documentation is not received within 60 days of the date of loss, coverage may be denied.

Required documentation may consist of, but is not limited to:

1. our signed and completed claim form;

2. an itemized repair bill;

3. a copy of charge slip for the rental of the Rental Auto, Rental Auto contract or machine generated receipt to show rental was charged and paid for with an American Express Card;

4. a police report (if applicable);

5. photos of the damaged vehicle, if available;

6. a copy of the Cardmember's, authorized driver's or employer's auto insurance coverage, or a notarized letter stating no insurance;



7. a copy of all claim documents and correspondence, provided by the Car Rental Company.

8. a copy of the Rental Company's utilization log;

9. a copy of the driver's license of the Cardmember and/or authorized driver, unless the driver's license number shows on the rental agreement;

10. a copy of the written rental agreement, front and back, which documents when the Rental Auto was checked out and checked in; and

11. information pertaining to available insurance coverage(s).

Cardmember cooperation with issues related to their benefits is required. If all required documentation is not received within 180 days of the date of loss (except for documentation which has not been furnished for reasons beyond the Cardmember's control), coverage may be denied.

**How Benefits are Paid**

All Car Rental Loss and Damage Insurance payments reimbursable under the policy are payable to the Cardmember, except that payment may be made, at the discretion of the Insurer, jointly to the Cardmember and the Commercial Car Rental Company when the Car Rental Company has not been reimbursed for the covered loss or damage, or the Cardmember has not validly assigned his/her payments to the Rental Company or any other party.

*Note: Benefits will not be paid if, on the date of loss, on the date of claim filing, or on the date of potential claim payment, any amount due on Your Card account is past due or Your Card is cancelled.*

**Rights of Recovery**

In the event of a payment under this Policy, the Insurer is entitled to all the rights of recovery that the Cardmember, to whom payment was made, has against another. That Cardmember must sign and deliver to the Insurer any legal papers relating to that recovery, do whatever else is necessary to help the Insurer exercise those rights and do nothing after loss to harm the Insurer's rights.

When a Cardmember or Commercial Car Rental Company has been paid damages under Policy No. AX0925, and also recovers from another, the amount recovered from the other shall be held by that Cardmember or Commercial Car Rental Company in trust for the Insurer and reimbursed to the extent of the Insurer's payment.

As a condition precedent to coverage, the Cardmember is required, and has a duty to fully cooperate with the Insurer in any investigations, subrogation matters or legal proceedings by providing copies of any and all legal notices and any and all statements, including sworn statements and contributing any other papers and documents to reasonably assist in the disposition of the legal matter.

**Notification of Legal Action**

When a Cardmember is served with suit and/or summons papers relating to a Car Rental Loss and Damage claim, the Cardmember must notify (see address and phone number under Claims Notice section) and provide copies of the suit or summons papers to the Car Rental Loss and Damage claims unit within 15 days of when the Cardmember is served. Failure to comply may result in denial of benefits.

**Additional Information for You**

This coverage is underwritten by AMEX Assurance Company ("Insurer") through Insurance Policy AX0925 (the "Policy") issued to American Express Travel Related Services Company, Inc. and its participating subsidiaries, affiliates and licensees. The Policy may be changed or terminated.

This Description of Coverage is an important document. Please keep it in a safe place. Although it describes the present form of insurance as it exists at the time of printing, this document is not the Policy or contract of insurance. The benefits described in this document are subject to all of the terms, conditions and exclusions of the Policy issued by the underwriter. This document replaces any prior Description of Coverage under the Policy which may have been furnished to the Cardmember.

*[signature]* Joy A. Hanson *[signature]* John M. Collins

Joy A. Hanson, President
AMEX Assurance Company
CRLDI-DOC-CCSG 11/05

John M. Collins, Secretary
AMEX Assurance Company

FDR 920608

---

1. For those eligible and enrolled in Membership Rewards, if a Membership Rewards redemption certificate is used, coverage is provided only to Rental Autos rented in the United States.

2. When used in conjunction with a Membership Rewards redemption certificate, the participating Car Rental Companies are limited to Hertz, National and Budget.

3. If eligible and enrolled in Membership Rewards, coverage is also activated when the Cardmember (1) presents a Membership Rewards redemption certificate and (2) uses a Membership Rewards redemption certificate at a participating Commercial Car Rental Company. Important note for those residing in Membership Rewards: A Membership Rewards redemption certificate can only be redeemed by eligible Cardmembers. Benefits will not be paid when a Membership Rewards redemption certificate has been transferred to non-eligible Cardmembers and/or non-Cardmembers.

4. Does not apply to New York State residents.

**Additional Information for Residents of Louisiana**

The Rights of Recovery section is replaced with the following:

If the Company makes any payment under this Policy and the Cardmember has the right to recover damages from another, the Company shall be subrogated to that right. However, the Company's right to recover is subordinate to the Cardmember's right to be fully compensated.
CRLDI-RDRI-LA 11/05

**Additional Information for Residents of South Dakota**

Under Losses Not Covered, item number 5, is replaced with the following:

Car Rental Loss and Damage Insurance does not cover losses caused by or contributed to by:

5. violation of criminal law, or commission of a criminal act, whether cited or charged;

Under Losses Not Covered, item number 7, is replaced with the following:

Car Rental Loss and Damage Insurance does not cover losses caused by or contributed to by:

7. consumption of alcohol at or in excess of the legal blood alcohol level for a felony conviction in the state or locality in which the Accident occurred;
CRLDI-RDRI-SD 11/05

**Additional Information for Residents of Vermont**

Under Losses Not Covered, the following item is hereby removed:

7. alcohol intoxication on the part of the driver, as defined in the state where the Accident occurred;
CRLDI-RDRI-VT 11/05

**Additional Information for Residents of Wisconsin**

Under Losses Not Covered, the following items are hereby removed:

5. illegal activity, such as losses where the Rental Auto was used for, or involved in illegal activity or felony;

6. alcohol intoxication on the part of the driver, as defined in the state where the Accident occurred;

8. voluntarily taking any drug or acting under the influence or effect of that drug (unless taken as prescribed or administered by a Doctor);

Under Losses Not Covered, the following item is added:

18. The use of the Rental Auto for unlawful purposes, or for transportation of liquor in violation of law, or while the driver is under the influence of an intoxicant or a controlled substance or controlled substance analog, or a combination thereof, or under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving, or any use of the motor vehicle in a reckless manner.
CRLDI-RDRI-WI 11/05

**Additional Information for Residents of West Virginia**

Under How Benefits are Paid, the footnote, to the note that reads:

*Note: Benefits will not be paid if, on the date of loss, on the date of claim filing, or on the date of potential claim payment, any amount due on Your Card account is past due or Your Card is cancelled, is hereby revised to read as follows:*

Does not apply to West Virginia and New York State residents.
CRLDI-RDRI-WV 11/05

---

**Additional Information for Residents of North Carolina**

A portion of the fees associated with this Card are applied to the insurance benefit.
CRLDI-RDRI-NC 11/05

## The Event Ticket Protection Plan

**Description of Coverage**

Underwritten by AMEX Assurance Company, Administrative Office, 480 Pilgrim Way, Suite 1400, Green Bay, WI 54304 (Herein called the Company)

**Coverage Overview**

The Event Ticket Protection Plan provides insurance to a Cardmember when the expense of a Ticket has been charged to the Cardmember's Account and the Ticketholder cannot use the Ticket due to a Covered Incident for which benefits are payable under this Plan. We will reimburse You, up to a maximum coverage limit of $1,000 per Occurrence Gold, for the expense of the unused Ticket charged to Your Account for two Covered Incidents for each Account for each 12-month period beginning when the eligible Ticket has been charged to the Cardmember's Account. If Ticket reimbursement, due to a Covered Incident for which benefits are provided under this Plan, is provided to the Ticketholder by a Producer, Venue, or other insurance, the coverage provided by the Event Ticket Protection Plan becomes secondary and will pay only that portion of the Ticket expense not reimbursed by the Producer, Venue, or other insurance.

**Definitions**

Certain words used in this Description of Coverage are capitalized throughout and have special meanings.

**Account** means Your American Express Card account.

**Cardmember** means a person who has been issued an American Express Card that is current and for which the Account is in good standing and who maintains a Permanent Residence in the 50 United States of America or the District of Columbia.

**Covered Incident** means an incident listed under the Description of Benefits section of the Plan.

**Delay** means any delay other than a Transportation Accident.

**Destroyed Ticket** means a Ticket that cannot be redeemed as a direct result of a misfortune experienced by the Ticketholder which takes place prior to the Event and destroys the Ticketholder's Ticket.

**Event** means a public gathering for an audience that will include the Ticketholder, which is legal, takes place within the 50 United States of America or the District of Columbia, and which requires an admission fee in exchange for a Ticket.

**Medical Emergency** means an unforeseen bodily injury or illness to You or any member of Your household, of such severity as to require Medically Necessary treatment.

**Medically Necessary** means unforeseen urgently required treatment to You or any member of Your household by a Physician or Dentist.

**Multi-day Ticket** means a Ticket that may be used more than once for an Event that is the same or related and which occurs on consecutive days over a period of not more than several successive weeks.

**Occurrence** means the expense charged to the same Account of a Cardmember for the entire cost of the purchase, separately or together, of any number of Tickets for the same Event, including Ticket handling fees.

**Permanent Residence** means the one primary dwelling place where the Cardmember permanently resides and to which they intend to return.

**Physician or Dentist** means a person licensed in the healing arts, other than a member of the Cardmember's family, and acting within the scope of their license for the service or treatment provided.

**Plan** means the Description of Coverage for the Event Ticket Protection Plan.

**Policy** means the Group Insurance Master Policy and any attachments, endorsements, riders and applications associated with it.

**Producer** means the person or group of persons who provide the financial backing and who are responsible for conducting the Event.

**Season Ticket** means the purchase of admission as a subscriber or season Ticketholder to a series of similar forms

of diversion, education or entertainment to be attended over a period of weeks, months, or years.

Ticket means written evidence permitting admission to an Event, including a Multi-day Ticket or Season Ticket, which clearly indicates the name of the Event, the date on which the Event is to take place and the Event Venue, by means of which an Occurrence can be established. Ticket does not include transportation on a vehicle of any kind to or at an Event or parking at an Event.

Ticketholder means either the Cardmember who has charged the expense of their Ticket to an Account or a person who has received a Ticket from the Cardmember either by arrangement with such person or as a gift.

Transportation Accident means physical damage to the vehicle transporting You to the Event which delays or ends the Ticketholder's travel and causes the Ticketholder to miss the Event.

Venue means the name and location of the facility where the Event is to take place.

We, Us, Our means AMEX Assurance Company and its duly authorized agents.

You, Your, Yourself means the Cardmember.

Description of Benefits

Benefits are payable only to the Cardmember, to whose Account the expense of the Ticket has been charged, when a loss occurs as a result of any of the following:

1.  Medical Emergency;
2.  cancellation of the Event by the Producer or Venue without providing full reimbursement of the Ticket cost, an equal value ticket or a rain check;
3.  catastrophe, regardless of cause, in the immediate vicinity of the Event site to which the Ticketholder's access is prevented by governmental authority;
4.  Transportation Accident;
5.  Destroyed Ticket;
6.  theft of Ticket;
7.  jury duty;
8.  subpoena or other unanticipated legal process;
9.  death; or
10. emergency call to duty as a member of a National Guard unit or Active Reserve or for active duty members of the United States Armed Forces.

Exclusions

Benefits are not payable if the loss for which coverage is sought was directly or indirectly, wholly or partially, contributed to or caused by the following:

1.  infirmity, disease or sickness of the Ticketholder, other than as defined by Medical Emergency;
2.  Delay;
3.  fraud or illegal activity of any kind by the Ticketholder;
4.  confiscation by any governmental authority;
5.  active participation in a civil public disturbance or protest;
6.  negligent failure of a duty to care by any third party in whose possession a Ticket has been temporarily placed by the Ticketholder; or
7.  Lost Ticket.

Claims

If a Ticketholder experiences a loss for which You believe a benefit is payable under this Plan, You must provide both Notice of Claim and Proof of Loss.

Notice of Claim

Notice of claim should be provided to Us within 30 days of the loss. You may contact us by phone by calling toll-free statewide 1-800-620-4991 or, if from overseas, by calling collect 1-303-273-6498. You may also write to us at Event Ticket Protection Plan, P.O. Box 402, Golden, CO 80402.

Failure to provide notice of claim within 30 days will not invalidate a claim or reduce any benefit payment that may be found to be eligible, if it can be shown that it was provided as soon as reasonably possible. At the time You provide Us with notice of claim, We will assist You with Your proof of loss by providing You with instructions and with documents, which You must complete and return to Us. You are required to cooperate with Us and provide documentation as requested by Us which is required and necessary to process Your claim and determine if benefits are payable. If all required documentation is not received within 30 days of the date of the Covered Incident (except for documentation which has not been furnished for reasons beyond Your control), coverage

may be denied. It is Your responsibility to provide all required documentation necessary.

Proof of Loss

Proof of loss requires that You send Us all the information We request, at Your expense, in order that Your claim may be evaluated and that We may make a determination as to whether the claim may be paid.

Except in the instance of theft or Destroyed Ticket, as noted under the Description of Benefits, We will require that You provide Us with the Ticket which could not be used because of a Covered Incident for which insurance is provided under this Plan. In addition to the Ticket, We will ask that You include with Your proof of loss any documentation We may request in order to establish the existence of a Covered Incident eligible for coverage under the Description of Benefits. We reserve the right to deny the claim if the Ticket You submit as part of Your proof of loss evidences redemption by any mark, stamp, hole, tear or other evidence of redemption.

If admission to an Event was charged to Your Account, but in lieu of a Ticket You received only confirmation of admission by e-mail or the promise of admission to the Event upon picking up a Ticket at the Event, and if a Covered Incident occurred for which a claim may be payable under this Plan, You must cooperate with Us in providing proof of loss as to the Covered Incident, and We will attempt to complete the necessary research to determine that the charge to Your account was for admission to the Event as claimed by You.

You must provide satisfactory proof of loss as soon as possible after We have informed You as to what You must provide Us and in no case more than 30 days after being so informed, except if it can be shown that it was provided as soon as reasonably possible.

Proof of loss documentation may be mailed to Us at the same address as listed above for mailing a notice of claim.

Payment of Claims

If Ticket reimbursement, due to a Covered Incident for which benefits are provided under this Plan, is provided to the Ticketholder by a Producer, Venue, or other insurance, the coverage provided by the Event Ticket Protection Plan becomes secondary and will pay only that portion of the Ticket expense not reimbursed by the Producer, Venue, or other insurance.

If Your proof of loss demonstrates that Your claim is payable according to this Plan, We will reimburse You the amount charged to Your Account for the Event Ticket You purchased, less any reimbursement You may receive, up to the maximum coverage limit as stated in the Coverage Overview section.

Any payment that We make in good faith will fully discharge Us to the extent of that payment.

When a Covered Incident has caused the Ticketholder to experience a loss for the total charge to the Account and that charge is more than the actual face value of the Ticket, eligible benefits will be available on a pro rata reimbursement basis determined by the number of separate Tickets purchased for the Event.

When a Covered Incident has caused the Ticketholder to experience a loss in conjunction with a Multi-day Ticket or Season Ticket, eligible benefits will be available on a pro rata basis determined by days for Multi-day Tickets and by series length for Season Tickets.

Benefits are only eligible for the Ticketholder who experienced a loss for which this Plan provides benefits. You will be reimbursed only for those Tickets and on a pro rata basis.

Right of Recovery

In the event of a payment under this Plan, We are entitled, and become subrogated, to the extent of such payment, to all of the Ticketholder's rights and remedies against any responsible party. Upon Our request, the Ticketholder must provide us reasonable assistance, including signing documents if necessary, to bring suit in the Ticketholder's name and do nothing after loss to harm Our rights. When You have been paid under this Plan by Us and the Ticketholder recovers from another, the amount recovered shall be held in trust for Us and reimbursed to Us to the extent of Our payment. If Our payments for losses exceed the maximum amount payable to You under any benefit of this Plan, We have the right to recover any amount exceeding the maximum amount payable.

General Provisions

Description of Coverage

Any conflict between the terms of the Description of Coverage and the Policy will be decided in favor of the Policy. A copy of the Policy will be maintained and kept by Us and may be examined by You at any time.

Entire Contract; Changes

This Plan, the Policy, any applications, endorsements or riders and any other attachments make up the entire contract. Any statement You make is a representation and not a warranty. This Plan may be changed at any time by providing notice to you. Only the President, Vice-President or Secretary of AMEX Assurance Company may change or waive the provisions of the Plan. No agent or other person may change the Plan or waive any of its terms.

Termination or Cancellation

Coverage will cease at 12:01am standard time on the earliest of the following:

1.  the date You no longer maintain a Permanent Residence in the 50 United States of America or the District of Columbia;
2.  the date We determine that misrepresentation or fraud occurred;
3.  the date the Policy is cancelled;
4.  the date You are no longer a Cardmember and Your Account ceases to remain in good standing; or
5.  the date the Plan is not available in the location where You maintain a Permanent Residence.

Termination of coverage will not prejudice any claim originating prior to termination subject to all other terms of this Plan.

Fraud

If any request for benefits made under the Plan is determined to be fraudulent or if any fraudulent means or devices are used by You, any Ticketholder, or by anyone acting on Your behalf to obtain benefits, all benefits will be forfeited.

Legal Actions

No legal action may be brought to recover against this Plan within 60 days after initial written proof of loss has been received by Us. No such action may be brought after three years from the time written proof of loss is required to be given.

If at time limit of this Plan is less than allowed by the laws of the state where You live, the limit is extended to meet the minimum time allowed by such law.

Important Additional Information For You

Benefits provided under the Event Ticket Protection Plan extend to Tickets You purchase and charge to Your Account that You intend to use or have purchased on behalf of others or as gifts. Reimbursement for any Covered Incident applies only to You. Only You have a claim to insurance benefits under the Event Ticket Protection Plan.

AMEX Assurance Company may cancel this Plan at any time by sending a written notice at least thirty (30) days in advance to You at Your last known address.

The Event Ticket Protection Plan is underwritten by AMEX Assurance Company, Administrative Office, 480 Pilgrim Way, Suite 1400, Green Bay, WI 54304. Coverage is determined by the terms, conditions and exclusions of Group Master Policy AX0974 and is subject to change with notice. This document does not replace the Policy.

This document replaces all existing prior Plan documents You may have received for the Event Ticket Protection Plan.

This Description of Coverage is an important document. Please read it and keep it in a safe place.

In Witness Whereof, We have caused this Description of Coverage to be signed by Our officers:

| | |
|---|---|
| Joy A. Hanson, President | John M. Collins, Secretary |
| AMEX Assurance Company | AMEX Assurance Company |
| ETP-DOC 12/05 | GOLD |

Important information regarding coverage changes for Alaska residents:

AMEX Assurance Company, Administrative Office, 480 Pilgrim Way, Suite 1400, Green Bay, WI 54304

FDR 920608

For residents of Alaska, the Event Ticket Protection Plan Description of Coverage to which this rider is attached is amended to include the *bold italicized* language as follows:

The Legal Actions section is hereby removed in its entirety and replaced with the following which is added and made part of the Description of Coverage:

Legal Actions

*No legal action may be brought to recover against this Plan within 60 days after initial written proof of loss has been received by Us. No such action may be brought after three years from the time written proof of loss is required to be given. If there are any claims the three year time frame does not begin to run until after the claim has been denied.*

The Exclusions section is hereby removed in its entirety and replaced with the following which is added and made part of the Description of Coverage:

Exclusions

Benefits are not payable if the loss for which coverage is sought was directly or indirectly, wholly or partially, contributed to or caused by the following: 1. infirmity, disease or sickness of the Ticketholder, other than as defined by Medical Emergency; 2. Delay; 3. fraud or illegal activity of any kind by the Ticketholder; 4. confiscation by any governmental authority; 5. active participation in a civil public disturbance or protest; or 6. negligent failure of a duty to care by any third party in whose possession a Ticket has been temporarily placed by the Ticketholder.

*These exclusions do not apply if the dominate cause of a loss is a risk or peril that is not otherwise excluded.*

There are no other changes to the Description of Coverage.
By:

Joy A. Hanson, President                    John M. Collins, Secretary
ETP-RDR1-AK 11/06

Important information regarding benefit changes for Louisiana residents:

AMEX Assurance Company, Administrative Office, 480 Pilgrim Way, Suite 1400, Green Bay, WI 54304

For residents of Louisiana, the Event Ticket Protection Plan Description of Coverage to which this rider is attached is amended to include the *bold italicized* language as follows:

The Right of Recovery section is hereby removed and replaced with the following which is added and made part of the Description of Coverage:

Right of Recovery

*If We make any payments under this Plan and the Ticketholder has the right to recover damages from another, We shall be subrogated to that right. However, Our right to recover is subordinate to the Ticketholder's right to be fully compensated.*

There are no other changes to the Description of Coverage.
By:

Joy A. Hanson, President                    John M. Collins, Secretary
ETP-RDR1-LA 10/06

Important information regarding benefit changes for Missouri residents:

The Description of Coverage ETP-DOC 12/05 has changed to ETP-DOC-CEN 05/06.

AMEX Assurance Company, Administrative Office, 480 Pilgrim Way, Suite 1400, Green Bay, WI 54304

For residents of Missouri, the Event Ticket Protection Plan Description of Coverage to which this rider is attached is amended to include the *bold italicized* language as follows:

Notice of Claim

*Notice of claim should be provided to Us within 30 days of the loss however, no claim will be denied based upon the insured's failure to provide notice within such specified time, unless this failure operates to prejudice the rights of the insurer. You may contact us by phone by calling toll-free stateside: 1-800-620-4991 or, if from overseas, by calling collect 1-303-273-6498. You may also write to us at Event Ticket Protection Plan, PO Box 402, Golden, CO 80402.*

General Provisions

Legal Actions

*No legal action may be brought to recover against this Plan within 60 days after initial written proof of loss has been*

received by Us. No such action may be brought after ten years from the time written proof of loss is required to be given.

If a time limit of this Plan is less than allowed by the laws of the state where You live, the limit is extended to meet the minimum time allowed by such law.

Questions

*For questions on this Policy, please contact Client Service at 1-800-626-4991.*

There are no other changes to the Description of Coverage.
By:

Joy A. Hanson, President                    John M. Collins, Secretary
ETP-RDR1-MO 09/06

Important Information regarding benefit changes for Vermont residents:

AMEX Assurance Company, Administrative Office, 480 Pilgrim Way, Suite 1400, Green Bay, WI 54304

For residents of Vermont, the Event Ticket Protection Plan Description of Coverage to which this rider is attached is amended to include the *bold italicized* language as follows:

Important Additional Information For You

*AMEX Assurance Company may cancel this Plan at any time by sending a written notice of cancellation accompanied by the reason for cancellation at least forty-five (45) days in advance to You at Your last known address.*

Termination or Cancellation

*2. the date We determine that misrepresentation, non-disclosure or fraud in enrollment or claims presentation has occurred; Under this circumstance, We will provide 45 days advance written notice of cancellation;*

*6. The end of the period for which required premiums are due but not paid. Under this circumstance, We will provide 15 days advance written notice of cancellation accompanied by the reason for cancellation to You at Your last known address.*

There are no other changes to the Description of Coverage.
By:

Joy A. Hanson, President                    John M. Collins, Secretary
ETP-RDR1-VT 09/06

Important information regarding benefit changes for Washington residents:

AMEX Assurance Company, Administrative Office, 480 Pilgrim Way, Suite 1400, Green Bay, WI 54304

For residents of Washington, the Event Ticket Protection Plan Description of Coverage to which this rider is attached is amended to include the *bold italicized* language as follows:

The first paragraph of the "Exclusions" section is deleted and replaced with the following:

Exclusions

*We will not pay for loss caused by any of the excluded events described below. Loss will be considered to have been caused by an excluded event if the occurrence of that event directly and solely results in loss, or initiates a sequence of events that results in loss, regardless of the nature of any intermediate or final event in that sequence.*

The Description of Coverage provision of the "General Provisions" section is deleted and replaced with the following:

General Provisions

Description of Coverage

*Any conflict with the terms of the Description of Coverage will be decided by looking at the intent of the Description of Coverage provided to You. A copy of the Group Insurance Master Policy will be maintained and kept by the Master Policyholder and may be examined at any time.*

The second point in the Termination or Cancellation provision of the "General Provisions" section is deleted and replaced with the following:

General Provisions

Termination or Cancellation

*2. the date We determine that You or someone on Your behalf intentionally misrepresented or fraud occurred;*

The last paragraph of the Termination or Cancellation provision of the "General Provisions" section is deleted and replaced with the following:

General Provisions

Termination or Cancellation

The Company has the right to cancel the Policy at any time by sending a written notice at least 45 days in advance to You at Your last known address. The notice will include the reason for cancellation.

The second and third paragraphs of the "Important Additional Information For You" section are deleted and replaced with the following:

Important Additional Information For You

*AMEX Assurance Company may cancel this Plan at any time by sending a written notice at least forty-five (45) days in advance to You at Your last known address. The notice will include the reason for cancellation.*

*The Event Ticket Protection Plan is underwritten by AMEX Assurance Company, Administrative Office, De Pere, WI. The Plan may be changed or cancelled at any time with notice. The notice will include the reason for cancellation.*

There are no other changes to the Description of Coverage.
By:

Joy A. Hanson, President                    John M. Collins, Secretary
ETP-RDR1-WA 09/06

EDR 920608

14

© 2008 American Express

